MONTELLO SALT COMPANY *v.* STATE OF UTAH.

ERROR TO THE SUPREME COURT OF THE STATE OF UTAH.

No. 136. Argued April 21, 1911.—Decided May 29, 1911.

The words "and including" following a description do not necessarily mean "in addition to," but may refer to a part of the thing described.

The words "110,000 acres of land . . . and including all the saline lands in the State" as used in § 8 of the Utah Enabling Act are not to be construed as a grant of such salines in addition to the 110,000 acres, but simply as conferring on the State the right, which it would not otherwise have, of including saline lands within its selections for the 110,000 acres.

This construction is in harmony with the uniform policy of Congress in connection with grants to the States of saline lands.

34 Utah, 458, reversed.

THE facts, which involve the construction of § 8 of the

Utah Enabling Act and the effect to be given to the words "and including all saline lands in the State" in connection with the grant of public lands for the University of Utah, are stated in the opinion.

*Mr. S. T. Corn* and *Mr. Jesse R. Barton*, with whom *Mr. James N. Kimball* was on the brief, for plaintiff in error:

The State did not take title to the saline lands in question by virtue of the Utah Enabling Act of July 16, 1894, without any act upon its part by way of selecting the same.

As unoccupied saline lands they were subject to location by defendant's grantors under the act of January 31, 1901, 31 Stat. 145.

The grant in § 8 of the Enabling Act did not by the words "and including" carry all saline lands in said State, besides the 110,000 acres originally granted.

Had that been the intention of Congress it was only necessary after the grant of the 110,000 acres to add the words, "and all saline lands in said State now known or hereafter to be discovered." To so construe the statute would be in direct violation of established rules of construction. Suth. Stat. Const., § 387; *Leavenworth R. R. Co.* v. *United States*, 92 U. S. 733, 740; *Dubuque and Pacific R. R. Co.* v. *Litchfield*, 23 How. 66.

All grants of this description are strictly construed against the grantee; nothing passes but what is conveyed in clear and explicit language. *Barden* v. *Nor. Pac. R. R. Co.*, 154 U. S. 288. To strike out the word "including" would be to extend the grant by implication and construe the act most strongly against the grantor.

The construction of the Enabling Act insisted on by defendant in error would be to create an endowment for the university many times greater than Congress ever conferred upon any other state university and also out of line with the legislation of Congress in regard to saline

land. See statutes on the subject of saline lands. 1 Stat. 466; Ohio Enabling Act of April 30, 1802; 2 Stat. 175. As to Ohio see also 4 Stat. 79; in Missouri, 3 Stat. 547; in Michigan, 5 Stat. 60; in Iowa, 5 Stat. 790; in Arkansas, 1836, 5 Stat. 58; 4 Stat. 505; 4 Stat. 304; in Illinois, 4 Stat. 305, 496. See also special act as to Michigan, Illinois and Arkansas, 9 Stat. 181, 182. Congress has carefully guarded the saline lands in the Indian Territory. 2 Stat. 280. See as to Alabama, 3 Stat. 491; and as to Mississippi, 2 Stat. 5, 48.

Saline lands or salt springs have never been granted to any State by blanket provisions. In 30 Stat. 484, all saline lands in its territory were granted to New Mexico, but the language employed was entirely different, the wording being, "together with all saline lands."

In general grants, unless otherwise clearly stated, neither mineral nor saline nor salt springs are granted. *Morton* v. *Nebraska*, 21 Wall. 660; *United States* v. *N. P. Ry. Co.*, 170 Fed. Rep. 498; 176 Fed. Rep. 706; *Garrard* v. *Silver Peak Mines*, 82 Fed. Rep. 578; *Mullan* v. *United States*, 118 U. S. 271; *Mining Co.* v. *Mining Co.*, 102 U. S. 167; *Newhall* v. *Sanger*, 92 U. S. 761; *L. L. & G. R. R. Co.* v. *United States*, 92 U. S. 733.

The word "and" does not add to the word "including." It is a principle of construction that "and" and "or" are considered of less importance in construing statutes and their direct meaning is more readily departed from than other words; and, if necessary to give effect to the intention of the parties to an instrument, will be excluded or disregarded altogether. *Railroad Co.* v. *Bartlett*, 11 N. E. Rep. (Ill.) 867; *Witherspoon* v. *Jarrigan*, 76 S. W. Rep. (Texas), 445, 447; *People* v. *Lyte*, 40 N. Y. Supp. 153, 161; *Boyle* v. *McMurphy*, 55 Illinois, 236; *Simpson* v. *Morris*, 3 Yeates, 104.

In the connection in which it is used in the act it should be excluded or disregarded as meaningless.

Omitting the word "and," as was done in all the re-
ports and debates in Congress, the grant is "one hundred
and ten thousand acres of land, including all saline lands
in said State" and means that the saline lands granted are
a part of and to be included in the one hundred and ten
thousand acres. If the salines were to be in addition to
the 110,000 acres it would make the precise acreage of the
total grant uncertain, as the number of acres of salines is
unknown. The grant was treated as consisting of a defi-
nite number of acres. See Vol. 26, Cong. Rec., p. 209.

Where the language is ambiguous, the applicable rule
of construction compels a construction favorable to the
grantor.

The ordinary signification of the term, as defined by
the dictionaries, both Webster and the Standard, is "to
confine within; to hold; to contain; to shut up; embrace,
and involve." For its definition, the Supreme Court of
Utah relies on *In re Goetz*, 75 N. Y. Supp. 750; *Hiller* v.
*United States*, 106 Fed. Rep. 63; and *United States* v.
*Pierce*, 147 Fed. Rep. 199. For cases defining "includ-
ing" see "Words and Phrases"; *In re Goetz*, 75 N. Y. Supp.
750; *United States* v. *Pierce*, 147 Fed. Rep. 199; *S. C.*, 140
Fed. Rep. 962; *Hiller* v. *United States*, 106 Fed. Rep. 73.

"Include" or the participial form thereof, is defined
"to comprise within"; "to hold"; "to contain"; "to shut
up"; and synonyms are "contain"; "enclose"; "com-
prise"; "comprehend"; "embrace"; and "involve."
And see for definition applicable to this case, *Neher* v.
*McCook Co.*, 11 S. Dak. 422; *Brainard* v. *Darling*, 132
Massachusetts, 218; *Henry's Ex.* v. *Henry's Ex.*, 81 Ken-
tucky, 342.

Under the language in the Enabling Act, Congress only
meant to grant the State of Utah, for university purposes,
one hundred and ten thousand acres of land, any part or
the whole whereof could be saline lands.

To hold otherwise would render every title granted to

a homesteader or other claimant under the United States laws, of lands in this State, uncertain and of little value; for, under the broad claim made by the State, if a homesteader, after he secured his patent from the United States, should discover a bed of salt under his land, the State could eject him therefrom. *Barden* v. *Nor. Pac. R. R. Co.*, *supra; Shaw* v. *Kellogg*, 170 U. S. 312; *Deffenback* v. *Hawk*, 115 U. S. 392; *Morton* v. *Nebraska*, 21 Wall. 660, and cases therein cited; *Steele* v. *St. Louis Smelting & Refining Co.*, 106 U. S. 360; *Davis* v. *Wiebold*, 139 U. S. 507.

*Mr. William D. Riter*, with whom *Mr. Albert R. Barnes*, Attorney General of the State of Utah, *Mr. Waldemar Van Cott* and *Mr. Edward M. Allison, Jr.*, were on the brief, for defendant in error:

In the Utah Enabling Act Congress used the word (1) in its true and proper sense, as defined by the lexicographers; or (2) in the sense of "also."

The word "include" is derived from the Latin verb *includo*, which means to shut up, to enclose. "Include" has two meanings, one of which is the same as that of the word "embrace." See Webster. Congress used the word "including" in the sense thus defined by the dictionaries. For similar use in some appropriation acts passed by the Fifty-eighth Congress, see 33 Stat. 834, 836, 838, 840, 876, 1092, 1114, 1173, 1174, 1187, 1188.

For other illustrations, see 18 Stat. 274.

In none of these sentences is "including" used in strict accordance with its dictionary meaning, but in the sense of "also." Similar expressions are constantly heard; see *United States* v. *Pierce*, 147 Fed. Rep. 199; *Hiller* v. *United States*, 106 Fed. Rep. 73; *In re Goetz's Will*, 75 N. Y. Supp. 750.

If it was the intention of Congress to include the saline lands in the 110,000 acres, then the phrase "and including all saline lands in said State" is awkwardly and un-

grammatically placed.    The lawmaker is presumed to know the rules of grammar.    *United States* v. *Goldenberg*, 168 U. S. 95, 103.

It is a significant fact that Congress used the word "all" in the phrase "and including all saline lands."    Of still greater significance is the use of the conjunction "and" in the phrase "and including all saline lands." No ambiguity can ever arise from the use of "and."    That word is always employed to express the relation of addition.

Upon the admission of other States to the Union, Congress made large grants of saline lands or salt springs. As to Minnesota, see 11 Stat. 166; as to Kansas, 12 Stat. 126.    A similar grant was made to Colorado, 18 Stat. 474; to Iowa, 5 Stat. 789; to Wisconsin, 9 Stat. 56.

The failure to fix any limit in Utah's Enabling Act is proof that Congress intended to give to this State all saline lands within its boundaries.    See 1 Lindley on Mines, §§ 513–515.

Effect must be given, if possible, to every word in a statute.    *Market Co.* v. *Hoffman*, 101 U. S. 112, 115; *Allen* v. *Louisiana*, 103 U. S. 80, 84; *Montclair* v. *Ramsdell*, 107 U. S. 147, 152; *United States* v. *Fisher*, 109 U. S. 143, 145; *Murphy* v. *Utter*, 186 U. S. 95, 111.

Congress intended to give all saline lands then known or to be thereafter discovered.    See *Barden* v. *Northern Pacific R. R. Co.*, 154 U. S. 288.

The rule of construction invoked by the plaintiff in error, that a public grant is construed strictly against the grantee, can come into play only where there is a real and substantial doubt as to what Congress intends.    Where the meaning of Congress is fairly and reasonably apparent, the grant cannot be defeated by invoking the rule that a legislative grant is construed strictly against the grantee. *United States* v. *D. & R. G. R. Co.*, 150 U. S. 1, 14; *Richmond &c. R. Co.* v. *Louisa R. Co.*, 13 How. 71, 86.

In the construction of an enabling act the land grants therein made are not to receive at the hands of this court the strict construction which is followed with respect to legislative grants to railroad companies or to States to aid in the construction of railroads.

In none of the following cases involving the construction of land grants as contained in the enabling acts of several of the States, did this court invoke the strict rule of construction. *Ham* v. *Missouri*, 18 How. 126; *Cooper* v. *Roberts*, 18 How. 173; *Morton* v. *Nebraska*, 21 Wall. 660; *Heydenfeldt* v. *Mining Co.*, 93 U. S. 634; *Beecher* v. *Wetherby*, 95 U. S. 517; *Mining Co.* v. *Mining Co.*, 102 U. S. 167; *Mullan* v. *United States*, 118 U. S. 271; *Missouri &c. R. Co.* v. *Roberts*, 152 U. S. 114; *Hitchcock* v. *Minnesota*, 185 U. S. 373; *Johnson* v. *Washington*, 190 U. S. 179; *Mining Co.* v. *Mining Co., supra.*

The Enabling Act being a compact between the United States and the State of Utah, it should receive the same construction as an ordinary contract. *Tennessee* v. *Whitworth,* 117 U. S. 129, 137. Where a State is the grantee a more liberal rule of construction prevails. *Indiana* v. *Milk,* 11 Fed. Rep. 389.

MR. JUSTICE MCKENNA delivered the opinion of the court.

The question in the case is whether § 8 of the Enabling Act of the State of Utah granted to the State all of the saline lands within the State or only enabled them to be selected as part of other lands granted and not specifically located.

Section 8 reads as follows (act of July 16, 1894, c. 138, 28 Stat. 107, 109):

"That lands to the extent of two townships in quantity, authorized by the third section of the act of February twenty-one, eighteen hundred and fifty-five, to be re-

served for the establishment of the University of Utah, are hereby granted to the State of Utah for university purposes, to be held and used in accordance with the provisions of this section; and any portion of said lands that may not have been selected by said Territory may be selected by said State. *That in addition to the above, one hundred and ten thousand acres of land, to be selected and located as provided in the foregoing section of this act, and including all the saline* lands in said State, are hereby granted to said State, for the use of said university, and two hundred thousand acres for the use of an agricultural college therein. That the proceeds of the sale of said lands, or any portion thereof, shall constitute permanent funds, to be safely held and invested by said State, and the income thereof to be used exclusively for the purposes of such university and agricultural college, respectively."

We have italicized the clause upon which the answer to the question turns. The special stress of it comes on the words "and including" and whether they carry a grant of all the saline lands or permit merely the selection of such lands as part of the 110,000 acres.

Construing the statute as granting all of the saline lands the State brought suit against the Montello Salt Company, herein called the Salt Company, in the District Court of the Third Judicial District, alleging that the Salt Company was in possession of certain of the lands, specifically describing them, claiming title under certain placer mining locations, and was threatening to take up and remove valuable deposits of salt therefrom. It was prayed that the Salt Company be adjudged to have no right, title, or interest in the lands and that the State be decreed their owner. An injunction pending the trial was also prayed, and general relief.

A preliminary injunction was issued. The answer of the Salt Company admitted that the lands were saline and alleged that it was the equitable owner of them by

virtue of conveyance from the original owners, about 1500 in number, all of whom were qualified to enter mineral claims under the land laws of the United States, including saline lands, and that such persons in groups of 8 entered upon 160 acres of the lands, discovered salt thereon, and did all that was necessary for the location of the same, including the filing of a notice of location, to be recorded in the office of the recorder within and for Tooele County, where the lands were situated. And it is alleged that thereafter, for the purpose of more economically developing the property, the locaters conveyed by quitclaim deeds their interest to the company and became stockholders of it.

It alleged that on July 16, 1894, date of the passage of the Enabling Act, the lands were not known to be saline, but were so covered with soil and other earthy substances that their true character was concealed, and were not discovered to be saline until November, 1906; "whereas, it is alleged, in truth and fact that under such substances and soil the said lands are covered by a deposit of salt varying from four to eight feet deep;" that prior to the discovery of their character the State had selected and received grants from the United States for the full amount of the 110,000 acres selected and located as provided in §§ 7 and 8 of the Enabling Act, and the grant by the United States for the University satisfied. It is further alleged that at the time of the passage of the Enabling Act only acres had been classified by the Surveyor General of the United States within and for the then Territory of Utah, as saline lands, and that said amount was in the contemplation of Congress when it passed the act, and that the same was duly approved.

The lands, it is alleged, were subject to location under the placer laws of the United States.

A demurrer by the State to the answer was sustained, and, the Salt Company refusing to proceed further, judg-

ment was entered for the State in accordance with the prayer of the complainant and the injunction was made perpetual. The judgment was affirmed by the Supreme Court of the State.

Three interpretations of the act are presented. The State insists that all of the saline lands were granted, known and unknown. The Salt Company presents two views, either of which, it is contended, determines in its favor. (1) If there is a grant of saline lands in addition to the grant of 110,000 acres, it is only of lands known to be saline at the date of the act. (2) There is no grant of saline lands except as they may be selected as part of the grant of the 110,000 acres.

The State puts its reliance on the word "including," and urges that Congress used the word—(1) "in its true and proper sense, as defined by lexicographers; (2) in the sense of 'also.'"

In support of the first ground, the following definitions are given from Webster: "1. To confine within; to hold; to contain; to shut up, as, the shell of a nut *includes* the kernel; a pearl is *included* in the shell. 2. To comprehend, as a genus the species, the whole a part, an argument or reason the inference; to contain; to embrace; to relate to; to pertain to; as Great Britain *includes* England, Scotland and Wales."

And then the argument is that Congress grants, first, two townships in a county (this was an affirmation of a prior grant to the Territory) and in addition 110,000 acres of land, to be selected and located in legal subdivisions (§ 7 referred to in § 8 for the manner of selection) within the State in such manner as the legislature may provide, with the approval of the Secretary of the Interior (§ 6 referred to in § 7 for the manner of selection). It is hence argued that the 110,000 acres was a grant of an undesignated portion of the public domain, and provision for its selection was necessary and was made, but no pro-

vision was made for the selection and location of saline lands because all were granted "irrespective of their area or 'locality.' " 'They are determined by their character; it is said, and "when the grant is of all and not of a part, selection and location become superfluous terms." 'It is further urged that if Congress intended to make the saline lands subject only to be selected as part of the 110,000 acres, the phrase "including all saline lands" is awkwardly and ungrammatically placed, but properly and grammatically placed if an independent grant is intended, and that Congress is supposed to know the rules of grammar, citing *United States* v. *Goldenberg*, 168 U. S. 95, 103.

The argument is further developed by pointing out that the word "all" is comprehensive and excludes the idea of a limitation of quantity or the selection of a part. If such limitation or selection had been intended, it is said, the word "any" would have been used, not "all," and it cannot be supposed that Congress again used a word inappropriate to its purpose.

"Of still greater significance," it is urged, "is the use of the conjunction 'and' in the phrase 'and including all saline lands,' " and that from its frequent use and ready understanding no ambiguity can ever arise from its employment, it being "always employed to express the *relation of addition*."

The State further urges that the word "including" may be taken as signifying "also," and illustrations are given, some from the statutes, some from decisions, Federal and state.

In *United States* v. *Pierce*, 147 Fed. Rep. 199, a provision in a tariff act was considered which provided as follows: "Wood: Logs and round manufactured timber, including pulp woods. . . ." The court (United States Circuit Court of Appeals, Second Circuit) said: "We think the word 'including' was used as the equivalent of 'also,' a sense in which it is frequently employed in tariff acts."

*Hiller* v. *United States*, 106 Fed. Rep. 73, was referred to. The latter case was also concerned with a tariff act. The provision passed upon was "embroideries, and all trimmings, including braids," etc. The construction given to the provision by the importer was that it covered "all trimmings, including braids" used for that purpose. The Government, on the other hand, contended that it meant "all trimmings, among which are included braids," etc., and that the word "including" was not used by way of specification but by way of addition. The court said: "It would be somewhat difficult to infer the legislative intention from the language of the paragraph without reference to the history of this part of the cotton schedule, because in the tariff acts the word 'including' is sometimes used merely to specify particularly that which belongs to the genus, and is sometimes used to add to the general class a species which does not naturally belong to it." The court resorted for explanation to the cotton schedule and decided in favor of the Government's contention, one member of the court dissenting.

*In re Goetz's Will*, 75 N. Y. Supp. 750, a testator bequeathed to his wife all of his "personal property, including furniture, plate and household effects." The court held the bequest was of all the personal property, saying " 'including' is not a word of limitation, rather is it a word of enlargement, and in ordinary signification implies that something else has been given beyond the general language which precedes it." The State in the case at bar concedes that the definition is too broad and says that what the court probably meant was that as commonly used the word had such meaning.

The State reinforces its interpretation of the words of § 8 by other considerations. It is urged that if Congress intended the saline lands to be a part of another grant it is the first instance of the kind. Fourteen States are enumerated to which all of the salt springs within them re-

spectively were granted. In twelve of the States there was a limitation of the number of springs. To Illinois the grant was of "all springs within such State; to New Mexico the grant was of 65,000 acres of non-mineral lands, "together with all the saline lands in said Territory." To eighteen States no saline lands or salt springs were given.

The Enabling Act of Utah, it is suggested, was the guide to the grant to New Mexico. The latter, it is said, is more explicit, but indicates the same purpose to convey to each all of the saline lands within their respective borders.

The Salt Company opposes the contentions of the State and invokes against the meaning attributed to § 8 the rule of strict construction of grants by the Government. The purpose of the grant is, it is urged, to constitute a fund by the sale of the lands the income from which is to be used exclusively for a university and agricultural college, and that the result of the grant as construed by the State would be to endow them as no other educational institution is endowed. And so construed, it is said, even by the decision in this case, the grant of 110,000 acres will be increased 40,000 acres, and as the demurrer concedes the deposit of salt is from four to eight feet thick, there will be the further increase of two or three million tons of salt, worth in the aggregate an almost fabulous sum. Future discoveries, it is suggested, will increase the grant still more.

Such consequences of the State's contention at once challenges its soundness, and we recall that counsel for the State asserted at the oral argument that its title attached to all lands having salt deposits, no matter what thickness of arable soil lay above the deposits, and as it is insisted that no selection of saline lands is necessary, embarrassment in the administration of the land laws and serious conflicts of title may arise. However, let us consider the words of § 8. The determining word is, of course, the word "including." It may have the sense of addition,

as we have seen, and of "also;" but, we have also seen, "may merely specify particularly that which belongs to the genus." *Hiller* v. *United States*, 106 Fed. Rep. 73, 74. It is the participle of the word "include," which means, according to the definition of the Century Dictionary, (1) "to confine within something; hold as in an inclosure; to inclose; to contain." (2) "To comprise as a part, or as something incident or pertinent; comprehend; take in; as the greater includes the less; the Roman Empire included many nations." "Including" being a participle is in the nature of an adjective and is a modifier. What, then, does it modify as used in § 8? Necessarily, we think the preceding substantive phrase "one hundred and ten thousand acres of land," and we have the meaning of the section to be that the saline lands are to be contained in or comprise a part of the 110,000 acres of land. We see no particular awkwardness in the expression of the purpose, and it well may be contended that it needs not for its support the rule of strict construction. And such purpose is in harmony with grants of saline lands to other States. It is also sustained by the reports of the committees of the House and Senate.

In the case of *Barnard* v. *Darling*, 132 Massachusetts, 218, it was held that a legacy of $100, "including money trusteed at a certain bank," could not be construed as meaning that the sum of $100 was in addition to the sum in bank.

In *Henry's Executor* v. *Henry's Executor*, 81 Kentucky, 342, a bequest of $14,000, "including certain notes," was held to mean that the notes formed a part of the $14,000 and were not in addition thereto.

In *Neher* v. *McCook County*, 11 S. Dak. 422, it was held that a certain section of the laws of the State which provided that the sheriff's fees should be $16 for summoning a jury, "including mileage," did not entitle him to mileage in addition to the $16.

We have seen that the State urges that the word "and" is always employed to express the relation of addition, and it is said, with words of emphasis, that Congress cannot be supposed to have been ignorant of its meaning. The Supreme Court of the State also gave special significance to the use of "and," as adding something to that which preceded. The court also considered that the word "including" was used as a word of enlargement, the learned court being of opinion that such was its ordinary sense. With this we cannot concur. It is its exceptional sense, as the dictionaries and cases indicate. We may concede to "and" the additive power attributed to it. It gives in connection with "including" a quality to the grant of 110,000 acres which it would not have had—the quality of selection from the saline lands of the State. And that such quality would not exist unless expressly conferred we do not understand is controverted. Indeed, it cannot be controverted. Under the applicable statutes and uniform policy of the Government saline lands would not have been subject to selection in satisfaction of the 110,000 acre grant in the absence of a special provision authorizing their selection. Rev. Stat., § 2318; Act of January 12, 1877, 19 Stat. 221, c. 18; *Morton* v. *Nebraska,* 21 Wall. 660; *Cole* v. *Markley,* 2 L. D. 847; *Salt Bluff Placer,* 7 L. D. 549; *Southwestern Mining Co.,* 14 L D. 597; *Jeremy* v. *Thompson,* 20 L. D. 299; *A. H. Geissler,* 27 L. D. 515.

Something is attempted to be made of the fact as militating against the selection of saline lands as part of the grant of 110,000 acres that no time limit was fixed, as in grants of such lands in other States. The fact has some force, and giving it and the other contentions of the State proper weight, they cannot prevail against the considerations to which we have adverted.

It is finally contended that if the saline lands are included in the 110,000 acres the State has the right to select

all of them, and that until it declares its intention no rights can be acquired by others under the mining laws. We are not called upon to discuss the contention. It is alleged in the answer that the State has selected and received grants from the United States for the full amount of 110,000 acres, "selected and located as provided in §§ 7 and 8 of the Enabling Act." As the State demurred to the answer, the truth of the allegation must be considered as admitted.

> *Judgment reversed and the cause remanded for further proceedings in accordance with this opinion.*

MR. JUSTICE HARLAN dissents.