WhitakeR, Judge,
delivered the opinion of the court:
The plaintiff sues the defendant for the amount deducted as liquidated damages for delay.
The plaintiff had a contract to build lots A, B, and C of the Missouri Bend Levee, and lots A, B, and C of the St. Gabriel Levee. Both jobs had to be completed within 450 calendar days from the date of notice to proceed. The Missouri Bend Levee was completed 67 days after the date set for completion, and the St. Gabriel Levee was completed 223 days later.
The defendant originally deducted $5,800 for liquidated damages for a total of 290 days beyond the termination date. The plaintiff filed claim for the amount deducted. The contracting officer, in acting upon this claim, found that the plaintiff had been delayed during the contract period by high water on the Missouri Bend Levee 112 days, and on the St. Gabriel Levee 4 days, and that the normal expected delay during this period was 83 days on the Missouri Bend Levee, and 2 days on the St. Gabriel Levee, leaving 31 days’ delay due to high water which he held the contractor could not have foreseen. He also found that the plaintiff had been delayed by high water after the contract period 162 days on the St. Gabriel Levee, and none on the Missouri Bend Levee, *698 and that the normal expected delay on the St. Gabriel Levee was 98 days. He held that the plaintiff was entitled to a remission of liquidated damages for the unexpected delay due to high water in the sum of $1,900, and this sum was remitted. The defendant retains the balance of' $3,900 liquidated damages for 195 days of delay, of which 183 days was delay due to high water, which the contracting officer held the contractor should have foreseen. The balance of 12 days was delay due to other causes hereafter to be mentioned.
The plaintiff says that it is entitled to recover the amount withheld for delay due to high water whether or not it could have been foreseen.
Article 9 of the contract provides for the deduction of liquidated damages for delay, with this proviso:
Provided, That the right of the contractor to proceed shall not be terminated or the contractor charged with liquidated damages because of any delays in the completion of the work due to unforeseeable causes beyond the control and without the fault or negligence of the contractor, including, but not restricted to, acts of God, or of the public enemy, acts of the Government, fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes, and unusually severe weather * * *.
This contractor, therefore, could not be penalized for delay due to unforeseeable causes. Among the things which are listed as unforeseeable causes are “acts of God, or of the public enemy, acts of the Government, fires, floods,” etc. It, therefore, would seem to follow that no amount should have been deducted for delay due to a flood. But the defendant contends that the proviso refers only to such floods as are unforeseeable. We think this position in untenable. The proviso does not mention unforeseeable floods, unforeseeable acts of God, unforeseeable acts of the public enemy, unforeseeable acts of the Government, unforeseeable fires, etc. All these things are unforeseeable. The proviso mentions them as among the tilings that are unforeseeable. The only cause, that is qualified is severe weather; the weather must be unusually severe. Moods are not qualified. Any flood is to be treated as an unforeseeable cause.
The construction of the word “including” is in harmony with the construction placed upon it by the courts in many *699 cases. See Montello Salt Co. v. Utah, 221 U. S. 452, and many other cases cited in Vol. 20 of “Words and Phrases,” page 443, et seq.
This identical proviso was so construed in Albina Marine Iron Works, Inc. v United States, 79 C. Cls. 714.
If there is any doubt about the correctness of this construction, that doubt ought to be resolved against assessing the penalty.
The other question is whether or not high water which stopped the work is to be considered as a flood, even though it did not overflow the levee. Webster’s dictionary defines a flood as “A great flow of water; a body of moving water; the flowing stream, as of a river; especially a body of water rising, swelling, and overflowing land.” The word frequently signifies an overflow, but it is not restricted thereto. Here we are convinced that it should not be so restricted because it is mentioned as one of the causes of delay and, therefore, means any rise in the water which caused cessation of work and delayed the contractor in the completion of the work. Apparently the water overflowed the banks of the river, but did not overtop the levee.
Another delay for which liquidated damages were deducted was alleged to have been due to the requirement by the contracting officer that the work begin at the upstream portion of the work instead of the downstream portion, as the contractor desired. This is alleged to have necessitated the building of a tie-in levee in order to take care of approaching high water. Had the work started at the downstream end, it is alleged this would not have been necessary.
It was well within the province of the contracting officer to order the work to start at the upstream end of the construction. Paragraph 17 of the specifications reads:
17. Order of work. — The contracting officer shall have power to designate the exact'localities at which the work shall be prosecuted; also the proportion of the force that shall be worked at any designated locality; and the time when sodding and other incidental work shall be done.
Moreover, when the contracting officer on October 27,1931, directed the plaintiff to begin construction at the upstream *700 end of the work, the plaintiff replied on October 30, 1931, agreeing to do so. No protest against the order was entered.
The plaintiff also complains that it was unnecessary to build the tie-in levee., but that it should have been permitted to continue with the construction of the main levee.
It was within the discretion of the contracting officer to order the construction of this tie-in levee. Paragraph 37 of the specifications provides in part:
In anticipation of destructive floods during the progress of the work, the contracting officer may require a * * * temporary protective levee to be built in front of the work, upon such location and of such dimensions as he may direct. If such a protective levee is built the contractor will be paid the contract price per cubic yard * * *.
When the building of this tie-in levee was ordered the river was rising at the rate of about a foot a day, and flood stages were predicted. The plaintiff believed that it could complete the construction of the levee before the flood arrived. But the contracting officer was of a different opinion, or at least thought that it would be risky to take this chance. This was a matter committed to his judgment.
Furthermore, when the plaintiff was first directed to build this tie-in levee, it orally protested and requested authority to continue working along the new levee line, but this request was refused and the plaintiff was directed to build the tie-in levee as ordered. Thereupon, plaintiff proceeded to build it without further protest, and without any appeal to the head of the department. Under such circumstances the plaintiff cannot complain here of the order of the contracting officer.
Plaintiff is entitled to recover of the defendant liquidated damages deducted for the 183 days it was delayed by high water, or a total of $3,660.00. It is so ordered.
Jones, Judge; Littleton, Judge; and Whaley, Chief Justice, concur.