## BLANKENSHIP et al. v. WESTERN UNION TEL. CO.

### No. 5564.

Circuit Court of Appeals, Fourth Circuit.

April 9, 1947.

Frederick T. Kingdon, of Mullens, W. Va. (Kingdon & Kingdon, of Mullens, W. Va., on the brief), for appellants.

Amos A. Bolen, of Huntington, W. Va. (C. W. Strickling, of Huntington, W. Va., Francis R. Stark and John H. Waters, both of New York City, and Fitzpatrick, Strickling & Marshall, of Huntington, W. Va., on the brief), for appellee.

Before PARKER, SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

John J. Blankenship and Viola Patrick, a partnership doing business under the firm name and style of Guyandotte Hotel, operated a hotel in the town of Mullens, West Virginia. The partnership made a contract with the Western Union Telegraph Company for the operation of a branch agency of Western Union in the hotel. After the agency had been in operation some time, Blankenship and Patrick filed a civil action in a court of the State of West

Virginia seeking a declaratory judgment as to their inclusion and their rights under the federal Fair Labor Standards Act (hereinafter called the Act), contending that they were "employees" of Western Union and that, in this relationship they came within, and were therefore entitled to the benefits of, the Act.

Western Union promptly removed the case to the United States District Court for the Southern District of West Virginia. Thereupon, Western Union filed a motion to dismiss. This motion was granted by the District Court and Blankenship and Patrick have duly appealed.

The District Court sustained the motion to dismiss upon two grounds: (1) The Act does not apply to a partnership; (2) The complaint and the contract disclose the relationship of Blankenship and Patrick to Western Union to be that of independent contractors and not the relationship of employees. We think the decision of the District Court was correct on both grounds.

Section 203(e) of the Act reads: " 'Employee' *includes* any *individual* employed by an employer." (Italics ours.) The only words of any real significance here are "includes" and "individual." We think "includes" is here used as a term of limitation indicating what belongs to a genus, rather than as a term of enlargement. Montello Salt Co. v. Utah, 221 U.S. 452, 31 S.Ct. 706, 55 L.Ed. 810, Ann.Cas. 1912D, 633. In some places in the Act, in connection with definitions, Congress used the word "means", while in other places we find "includes." Some light is shed on the meaning of "includes" in Section 203 (e) of the Act by the Conference Committee of the House and Senate, stating: " 'Employee' is *defined* as any *individual* employed by an employer." (Italics ours, Conference Committee Rep. No. 2738, p. 28, June 11, 1938, 75th Congress, 3rd Session.)

Again, in Section 203(a) of the Act "person" is defined as: " * * * an *individual, partnership,* association, corporation, business trust, legal representative, or any organized group of persons." (Italics ours.) Surely it would be crude and care-

less draftmanship if Congress expressly defined one term as including an *individual* and a *partnership,* then defined another term as including only an *individual,* and yet both terms are construed as applying to individuals and partnerships.

We further think, quite apart from pure analyses of definitions and terms, that the dominant purpose and the general philosophy of the Act show that Congress intended to limit the ambit of the Act to individuals and thus to exclude partnerships from its application. We do not hold, however, that members of partnerships may not, acting purely in their individual capacities, be "employees" under the Act. In the case before us, however, the contract was clearly made by the Western Union Telegraph Company, a corporation, and the Guyandotte Hotel, a partnership comprising Blankenship and Patrick.

Perhaps a stronger reason, certainly a more practical one, for the decision of the District Court is its holding that the complaint and the contract, when read together, disclose the status or relationship of Blankenship and Patrick to Western Union is that of independent contractors and not employees. Very clearly the Act does not include independent contractors.

We are not impressed by the contention of the plaintiffs here that the terms "employee" and "independent contractor" are to be defined and applied under the Act according to the technical rules of the common law. Speaking for our Court in United States v. Vogue, Inc., 4 Cir., 145 F.2d 609, 612, Judge Parker said: "Common law rules as to distinctions between servants and independent contractors throw but little light on the question involved. The Social Security Act, like the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., and the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., was enacted pursuant to a public policy unknown to the common law; and its applicability is to be judged rather from the purposes that Congress had in mind than from common law rules worked out for determining tort liability." See also, the language used by Mr. Justice Rutledge in National Labor Relations Board v. Hearst Publications, Inc., 322 U.S. 311, 64 S.Ct. 851, 88 L.Ed. 1170.

While the result reached will not be the same for all purposes and under all statutes, the dominant test whether one is an employee or an independent contractor is generally phrased in substantially similar terms. Said Judge Soper, speaking for our Court, in Underwood v. Commissioner of Internal Revenue, 56 F.2d 67, 71: "In short, it is very generally held that the right to control the manner of doing the work contracted for is the principal consideration in determining whether one is employed as an independent contractor or a servant. Various factors which shed light on the question were discussed in recent cases when it became necessary to decide whether a taxpayer was an independent contractor or a state employee entitled to exemption from income tax. From these discussions, it appears that the services of an employee or servant, as distinguished from those of a contractor, are usually characterized by regularity and continuity of work for a fixed period or one of indefinite duration, as contrasted with employment to do a single act or a series of isolated acts; by compensation on a fixed salary rather than one regulated by the value or amount of the work; by full-time employment with exclusive control by the employer of the employee's time, or at least the right to have first call upon the employee's services. On the other hand, control by the contractor of the instrumentalities which he uses and of the subordinate employees who assist him, and payment by him of their salaries or wages, are circumstances indicating that freedom of action which characterizes an independent contractor." See, also, Chicago, Rock Island & Pacific R. Co. v. Bond, 240 U.S. 449, 36 S.Ct. 403, 60 L.Ed. 735; Schroepfer v. A. S. Abell Co., 4 Cir., 138 F.2d 111; Walling v. Sanders, 6 Cir., 136 F.2d 78; Helena Glendale Ferry Co. v. Walling, 8 Cir., 132 F.2d 616; Bowman v. Pace, 5 Cir., 119 F.2d 858, 860. Compare De Raef Corporation v. United States, Ct.Cl., 70 F. Supp. 264, and cases therein cited.

True it is that the contract contained provisions controlling many aspects of the business. Thus the agency was required to report to Western Union's agent at Beckley, West Virginia, to make such reports as Western Union might require, to permit the display of Western Union signs, to keep the necessary supply of blank forms for telegrams, to abide by the general rules and regulations of Western Union. And the complaint contains broad allegations that Western Union issued frequent instructions controlling varied details as to the methods to be used in conducting the business of the agency.

Yet, when the complaint and the contract here are read together, a number of determinative factors appear. No single factor, of course, is controlling. But the overall picture, the totality limned by these factors in their entirety, amply justify the decision of the District Court that Blankenship and Patrick were independent contractors rather than employees, and thus were quite beyond the purview of the Act. We now set out some of these factors with brief comment.

The primary and, of course, most important business of the plaintiffs was the operation of the Guyandotte Hotel, for which the partnership was formed. The telegraph agency was merely one out of a number of incidents of the hotel business.

The telegraph agency was operated on premises absolutely controlled by the plaintiff. These premises were far removed from defendant, and the office, to which plaintiffs reported and from which they received instructions, was not in Mullens but in Beckley, another town. The daily number of hours worked by the plaintiffs and many details of their work could not be within the first-hand knowledge of Western Union.

It is clear that the plaintiffs were not required to devote their full and exclusive time to the telegraph agency. Obviously, a great advantage to the plaintiffs was that they could give to the telegraph agency odds and ends of their time, on which the hotel clearly had first call.

Quite important is it, we think, that the contract does not require that the plaintiffs personally perform the services required for the operation of the agency. The complaint clearly discloses the performance of some of these services by persons hired for that purpose by the plaintiffs.

A characteristic incident of the employer-employee relation—the employer's right to fire the employee—is lacking here. Either party could terminate the contract on 60 days notice, and the Western Union could cancel the contract for violation of its terms by the plaintiffs. Unless cancelled as above indicated, the contract was to continue for one year.

Under the contract, plaintiffs were to be compensated on a specified percentage of the receipts of the agency, not by a fixed salary or wages. Plaintiffs further agreed to endeavor to increase the business of the agency. Their compensation thus depended on their own activities and their success. And, under a provision of the contract, the plaintiffs assumed "all other expenses necessary to properly handle the telegraph company's business." By the supplemental agreement, a portion of the compensation was allotted to rental charges, the balance was to represent remuneration for services.

In Paragraph VI of their complaint, plaintiffs assert: "That they are receiving from said respondent, monthly, each for his and her services, *or services performed on their behalf,* to the respondent company, a monthly sum less than that prescribed and set forth by the Fair Labor Standards Act of 1938 * * *." (Italics ours.) Thus the plaintiffs do not claim that they are receiving for their services less wages than those prescribed by the Act. The allegation is that sub-standard wages are received *either* for their services *or* for the services of others whom they (not Western Union) have employed. Surely the ambit of the Act cannot properly be stretched to cover the employees of an "employee", who are paid by, and subject to the control of, the person who employed them and not the original "employer."

Finally, Paragraph VII of the complaint of plaintiffs states: " * * * the respondent regularly and punctually deducts and withholds from each of your orators' compensation monthly, the amounts set forth by law to be deducted and withheld by employers from employees' wages for payment of United States income and Federal Old Age Insurance taxes." We do not regard it as in any way showing that such withholding proves that Western Un-

ion is here liable to plaintiffs under the Fair Labor Standards Act or that such payments by Western Union made plaintiffs employees under the Fair Labor Standards Act.

It might be added that the Fair Labor Standards Act was originally intended to regulate minimum wages and maximum hours for wage-earners on a low economic level who needed such protection in order to secure satisfactory labor conditions. Certainly the Act did not contemplate that the employees should be the operators of a business on their own account to which business the services to be rendered to the so-called employer would be merely incidental. Nor was the Act intended to cover contracts between employers or to establish a minimum compensation for services rendered by one employer to another.

The judgment of the District Court is affirmed.

Affirmed.