47 Cal.2d 82 (1956)
TELEVISION TRANSMISSION, INC., et al., Petitioners,
v.
PUBLIC UTILITIES COMMISSION OF THE STATE OF CALIFORNIA, Respondent.
S. F. No. 19501. 
Supreme Court of California. In Bank. 
Oct. 5, 1956.
 Welch, Mott & Morgan, Hoey, Hall & Conti and E. Stratford Smith for Petitioners.
 Everett C. McKeage, Roderick B. Cassidy, Harold J. McCarthy, Wilson E. Cline and Edward F. Walsh for Respondent. *84
 TRAYNOR, J.
 Petitioner Television Transmission, Inc. operates a "community television antenna" furnishing coaxial television antenna service to approximately 950 television sets in the Walnut Creek, Lafayette, and Martinez areas of Contra Costa County. Approximately 700 of the 950 television sets are in Martinez. To provide this service petitioner places a high-gain antenna at a point of higher elevation than the area to be served. The antenna receives television signals from available sources, amplifies them, and sends them through a coaxial cable to the subscribers' television sets by tapoff devices. Under an agreement with the Pacific Gas and Electric Company and the Pacific Telephone and Telegraph Company, petitioner uses poles owned jointly or separately by these companies for which it pays certain fixed charges per pole per year. Of the four television antenna systems in Martinez alone, petitioner is the only one that uses utility poles to provide service. Subscribers to petitioner's television antenna service pay an initial "connect" fee and a continuing monthly charge.
 Residents of the area served by petitioner filed a complaint with the Public Utilities Commission alleging deficiencies in petitioner's service and requesting the commission to make an investigation and require petitioner to remedy the deficiencies or cease operating.
 After a hearing the commission found that petitioner operates as a telephone corporation and is therefore subject to its jurisdiction. The commission then issued an interim order requiring petitioner to make a detailed survey of its facilities and to submit a written report within 90 days setting forth criteria for establishing reasonable standards of service. It also ordered that further hearings be had to receive evidence relating to the adequacy of petitioner's service. A petition for rehearing was denied, and in this proceeding petitioner seeks to have the foregoing orders annulled on the grounds that it is not a public utility and that the commission therefore acted without jurisdiction.
 [1] The commission is a regulatory body of constitutional origin and derives its powers from the Constitution and the Legislature. (People v. Western Airlines, 42 Cal.2d 621, 634 [268 P.2d 723].) [2] Unless petitioner is a public utility, as defined in the Constitution or the Public Utilities Code, the commission was without power to issue the orders in question. Article XII, section 23 of the Constitution provides: *85
 "Every private corporation, and every individual or association of individuals, owning, operating, managing, or controlling any ... plant or equipment within this State, for ... the transmission of telephone or telegraph messages, or for the production, generation, transmission, delivery or furnishing of heat, light, water or power ... either directly or indirectly, to or for the public, and every common carrier, is hereby declared to be a public utility subject to such control and regulation by the ... Commission as may be provided by the Legislature, and every class of private corporations, individuals, or associations of individuals hereafter declared by the Legislature to be public utilities shall likewise be subject to such control and regulation." (Italics added.)
 In section 216, subdivision (a), of the Public Utilities Code the Legislature has declared that
 " 'Public utility' includes every common carrier, toll bridge corporation, pipeline corporation, gas corporation, electrical corporation, telephone corporation, telegraph corporation, water corporation, wharfinger, warehouseman, and heat corporation, where the service is performed for or the commodity delivered to the public or any portion thereof."
 [3] Although "includes" is ordinarily not a word of limitation (People v. Western Airlines, 42 Cal.2d 621, 639 [268 P.2d 723]), a legislative declaration that "public utility" includes those performing certain enumerated services is not a declaration that those performing other services, not encompassed by the services enumerated, are public utilities. In People v. Western Airlines, supra, on which the commission relies, we were concerned with the scope of a business activity declared by the Legislature to be a public utility, not with the question of expanding that section to embrace additional classes of business not mentioned in the section. Thus, unless a community television antenna falls within one of the enumerated classes of public utilities, the commission has no jurisdiction over it.
 The only classes enumerated that could conceivably include petitioner are electrical corporation, telephone corporation, or telegraph corporation. The commission held that it could make no finding that petitioner is an electrical corporation, [fn. 1] *86 since there is nothing in the record to show that its community television antenna system is used "... in connection with or to facilitate the production, generation, transmission, delivery, or furnishing of electricity for light, heat, or power, ...." Nor did it find that petitioner is a telegraph corporation. [fn. 2] (See Sunset Tel. & Tel. Co. v. Pasadena, 161 Cal. 265, 276-277 [118 P. 796]; Richmond v. Southern Bell Tel. & Tel. Co., 174 U.S. 761, 773-777 [19 S.Ct. 778, 43 L.Ed. 1162].) It did find, however, that petitioner operates as a telephone corporation [fn. 3] and is therefore subject to its jurisdiction.
 [4] To be a telephone corporation petitioner must operate a telephone line. (Pub. Util. Code, 234.) Although it may control, operate, or manage "conduits, ducts, poles, wires, cables, instruments, and appliances ... real estate, fixtures, and personal property" (Pub. Util. Code, 233) and do so "in connection with or to facilitate communication" (Ibid), it does not operate a telephone line and is therefore not a telephone corporation unless such control, operation, or management are in connection with or to facilitate communication "by telephone." (Ibid) The crucial word "telephone" is not defined in the code. Neither is the word "telegraph" as used in section 235. Yet the Legislature apparently regarded telephone and telegraph corporations as different from each other by providing separately for each, and this court has so regarded them. (Sunset Tel. & Tel. Co. v. Pasadena, supra, 161 Cal. 265, 276-277; see also Richmond v. Southern Bell Tel. *87 & Tel. Co., supra, 174 U.S. 761, 773-777.) Nor is there any evidence in the record as to activities, methods of operation, services, or anything else they may have in common on which a conclusion can be based that one also means the other or that either also means radio or television corporation. [5] In common understanding telephone, telegraph, radio, and television corporations are each different from the other, and until the Legislature otherwise provides we must so regard them.
 In Pacific Tel. & Tel. Co. v. Los Angeles, 44 Cal.2d 272, 281-283 [282 P.2d 36], on which the commission relies, the city attacked a declaration in a judgment that Pacific was entitled to use its lines to transmit telephone messages, telegraph messages, teletypewriter messages, telephotographs, program services (including radio and television broadcasts) and any other communication service by means of transmission of electrical impulses. We held that section 536 of the Civil Code (now Pub. Util. Code, 7901), which authorizes telephone corporations to construct their lines along public highways, places no restrictions upon what may be transmitted by means of electrical impulses over those lines. Pacific Telephone and Telegraph Company was unquestionably a telephone corporation, and it remained a telephone corporation and its lines remained telephone lines, even though they were incidentally used to transmit other forms of communication. The commission apparently reasoned that since section 7901 permits television broadcasts to be carried over telephone lines, any line erected to carry television broadcasts is a telephone line and that anyone who operates such a line is therefore a telephone corporation. [6] It does not follow, however, that because telephone corporations are not prevented by law from using their lines, which are unquestionably telephone lines, for the transmission of television broadcasts, any corporation that uses poles, wires, et cetera to transmit such broadcasts is a telephone corporation. It is not enough that there be a transmission by the use of poles, wires, et cetera; the transmission must be "in connection with or to facilitate communication by telephone." (Pub. Util. Code, 233.) [7] Petitioner's community television antenna is not operated "in connection with or to facilitate communication by telephone" or "in connection with or to facilitate communication by telegraph" as those words are commonly understood, but simply to enable its subscribers to receive television broadcasts that might otherwise be inaccessible to them. *88
 The commission urges that television is merely an advanced form of telephony, the art of reproducing sounds at a distance. It is true that television and telephony have in common the transmission of voices, for sounds, including voices usually accompany the pictures of the persons or things televised. Not only are the methods of transmission different in each art, however, but in telephony one may carry on a two-way communication by speaking as well as listening, and pictures of speaker and listener do not yet form a part of the communication. (See Re Edwin Bennett, 89 P.U.R. (N.S.) 149, 150.) Telegraphy differs from both in that ordinarily neither voices nor pictures are transmitted. Each may have in common the use of electricity, conduits, ducts, poles, wires, cables, instruments, appliances, et cetera, but no one of them includes all of the features of the others. Furthermore, the service by television as well as radio is more akin to that of music halls, theaters, and newspapers than it is to that of either telephone or telegraph corporations. Thus, under the Communications Act of 1934 [fn. 4] those engaged in the telephone or telegraph business are regulated as common carriers, [fn. 5] whereas television and radio broadcasting [fn. 6] is recognized as a field of free competition. (Federal Communications Com. v. Sanders Bros. Radio Station, 309 U.S. 470, 474-475 [60 S.Ct. 693, 84 L.Ed. 869].)
 The question whether a community television antenna is a public utility has been considered in at least two other states. In holding that it lacked jurisdiction because Congress had completely occupied the television field, the Wisconsin commission expressed "considerable doubt" whether a community television antenna was a telephone company. (Re Edwin Bennett, supra, 89 P.U.R. (N.S.) 149, 150.) The Wyoming commission, however, determined that a community television antenna was a public utility. It is significant that the commission based its conclusion on the ground, not that a community television antenna was a telephone corporation, but that under the Wyoming statute public utilities also included plants, property, or facilities for the transmission of intelligence by electricity. (Re Cokeville Radio & Electric Co., 6 P.U.R. (3d) 129, 133-134.) *89
 [8] Since petitioner is not a telephone corporation or within any other class of public utility enumerated in section 216, subdivision (a) of the Public Utilities Code, the commission had no jurisdiction to issue the orders in question.
 The orders are annulled.
 Gibson, C.J., Shenk, J., Carter, J., Schauer, J., Spence, J., and McComb, J., concurred.
 " 'Electric plant' includes all real estate, fixtures and personal property owned, controlled, operated, or managed in connection with or to facilitate the production, generation, transmission, delivery, or furnishing of electricity for light, heat, or power, and all conduits, ducts, or other devices, materials, apparatus, or property for containing, holding, or carrying conductors used or to be used for the transmission of electricity for light, heat, or power." (Pub. Util. Code, 217.)
 " 'Telegraph line' includes all conduits, ducts, poles, wires, cables, instruments, and appliances, and all other real estate, fixtures, and personal property owned, controlled, operated, or managed in connection with or to facilitate communication by telegraph, whether such communication is had with or without the use of transmission wires." (Pub. Util. Code, 235.)
 " 'Telephone line' includes all conduits, ducts, poles, wires, cables, instruments, and appliances, and all other real estate, fixtures, and personal property owned, controlled, operated, or managed in connection with or to facilitate communication by telephone, whether such communication is had with or without the use of transmission wires." (Pub. Util. Code, 233.)
NOTES
[fn. 1] 1. " 'Electrical corporation' includes every corporation or person owning, controlling, operating, or managing any electric plant for compensation within this State, ..." (Pub. Util. Code, 218.)
[fn. 2] 2. " 'Telegraph corporation' includes every corporation or person owning, controlling, operating, or managing any telegraph line for compensation within this State." (Pub. Util. Code, 236.)
[fn. 3] 3. " 'Telephone corporation' includes every corporation or person owning, controlling, operating, or managing any telephone line for compensation within this State." (Pub. Util. Code, 234.)
[fn. 4] 4. 47 U.S.C.A., 151 et seq.
[fn. 5] 5. 47 U.S.C.A. 201-222.
[fn. 6] 6. 47 U.S.C.A. 153(b), which defines communication by radio, includes television as a form of radio communication. (Allen B. Dumont Laboratories v. Carroll, 184 F.2d 153, 155, cert. den. 340 U.S. 929 [71 S.Ct. 490, 95 L.Ed. 670].)