**MORRIS FRIEDMAN & CO.**

v.

**UNITED STATES.**

C.D. 4392; Protest 69/46851–101686 against the decision of the district director of customs at the port of Philadelphia.

United States Customs Court,
First Division.
Nov. 22, 1972.

Allerton deC. Tompkins, New York City, for plaintiff.

Harlington Wood, Jr., Asst. Atty. Gen. (Urban S. Mulvehill and Jordan J. Fiske, New York City, trial attorneys), for defendant.

Before WATSON, MALETZ and RE, Judges.

MALETZ, Judge:

This case involves the dutiable status of rattan hanging chairs [1] exported from Hong Kong and entered at the port of Philadelphia in May and July 1969. The chairs were assessed for duty at the rate of 20 percent ad valorem under item 222.60 of the Tariff Schedules of the United States, as modified, T.D. 68–9 (19 U.S.C. § 1202), which reads as follows:

Schedule 2, Part 2, Subpart B:

1. This subpart does not cover—

\*    \*    \*    \*    \*    \*

(v) furniture (see part 4A of schedule 7);

\*    \*    \*    \*    \*    \*

Articles not specially provided for, of unspun fibrous vegetable materials:

222.60   Of one or more of the materials bamboo, rattan, willow, or chip ................ 20% ad val.

Plaintiff claims that the articles are properly dutiable at the rate of 17 percent ad valorem as "furniture" under item 727.10, as modified, T.D. 68–9,

which, with its governing headnote, provides:

Schedule 7, Part 4, Subpart A:

Subpart A headnote:

1. For the purposes of this subpart, the term "*furniture*" includes movable articles of utility, designed to be placed on the floor or ground, and used to equip dwellings, offices, restaurants, libraries, schools, churches, hospitals, or other establishments, aircraft, vessels, vehicles, or other means of transport, gardens, patios, parks, or similar outdoor places, even though such articles are designed to be screwed, bolted, or otherwise fixed in place on the floor or ground; and kitchen cabinets and similar cupboards, seats and beds, and sectional bookcases and similar sectional furniture, even though designed to be fixed to the wall or to stand one on the other; \*  \*  \*.

\*    \*    \*    \*    \*    \*

Furniture, and parts thereof, not specially provided for:

727.10   Of unspun fibrous vegetable materials ............. 17% ad val.

The record [2] establishes that the imported articles consist of basket-shaped chairs, without any legs or base, which hang from a chain and spring suspended either from the ceiling, or a post extending from the wall, or from a metal tripod stand resting on the floor. The chairs are designed to be used indoors and to be sat in by people with their feet on the floor.

Against this background, plaintiff concedes that the hanging chairs are not "designed to be placed on the floor or ground" within the meaning of headnote 1 of schedule 7, part 4, subpart A, but contends that since Congress used the word "includes" in that headnote, it did not intend to restrict the classification of furniture to articles specified therein; and that the imported articles are, in fact, furniture and therefore within the purview of the claimed provision. Defendant's position, on the other hand, is that whether or not the imported articles come within the common understanding of "furniture", that term, for tariff classification purposes, is limited by headnote 1, which, defendant argues, sets forth a restrictive definition that excludes the imported merchandise from classification thereunder.

1. The chairs were invoiced variously as "Rattan Stick Hanging Chair", "Rattan Child Stick Hanging Chair" and "Rattan Stick Hanging Chair with Arms."

2. Plaintiff called one witness, the president of the importing company, and introduced three exhibits into evidence. Defendant offered no evidence.

At the outset, it is to be observed that the term "furniture" has been held to be one of broad scope which is not limited to the usual or conventional kinds of furniture. It embraces articles of utility which are designed for the convenience or comfort of the user, either indoors or out. Morimura Bros. v. United States, 2 Ct.Cust.Appls. 181, T.D. 31941 (1911); Furniture Import Corp. v. United States, 56 Cust.Ct. 125, C.D. 2619 (1966); Canton Son, Inc. v. United States, 48 Cust.Ct. 375, Abs. 66580 (1962); Decorative Imports v. United States, 43 Cust.Ct. 31, C.D. 2099 (1959). Thus, if we were to apply common meaning as the *governing criterion*, we would have no difficulty finding that the imported hanging chairs are "furniture". See e. g., Fabry Associates, Inc. v. United States, 45 Cust.Ct. 88, C.D. 2203 (1960); Decorative Imports v. United States, *supra*. However, for the reasons that follow, we must conclude that headnote 1 sets forth a definition of furniture which constitutes a statutory restriction upon the articles classifiable as furniture under item 727.10, and that the merchandise in question does not come within the purview of that headnote.

In essence, the basic problem in this case is to determine the meaning of the word "includes" as used in headnote 1. Admittedly, the term by itself is not free from ambiguity. "Includes" has various shades of meaning and has been used both as a term of enlargement and of limitation or restriction. Thus, it may be used to preface an illustrative application of a general class, or in the sense of "also" to add to the general class a species which does not naturally belong to it. Phelps Dodge Corp. v. National Labor Relations Board, 313 U.S. 177, 61 S.Ct. 845, 85 L.Ed. 1271 (1941); Helvering v. Morgan's, Inc., 293 U.S. 121, 55 S.Ct. 60, 79 L.Ed. 232 (1934);

Application of Central Airlines, Inc., 199 Okl. 300, 185 P.2d 919 (1947); Illinois Cent. R. Co. v. Franklin County, 387 Ill. 301, 56 N.E.2d 775 (1944). Or it may be used synonymously with "means" or "comprise" as a word of limitation specifying particularly what belongs to the genus. Montello Salt Co. v. Utah, 221 U.S. 452, 31 S.Ct. 706, 55 L.Ed. 810 (1911); [3] Powers ex rel. Doyon v. Charron, 86 R.I. 411, 135 A.2d 829 (1957); Television Transmission, Inc. v. Public Utilities Commission, 47 Cal.2d 82, 301 P.2d 862 (1956); Blankenship v. Western Union Tel. Co., 161 F.2d 168 (CA4 1947); In re Sheppard's Estate, 189 App.Div. 370, 179 N.Y.S. 409 (1919).

It is, of course, basic that the Congressional intent is the all important factor in construing a statutory provision. Therefore, the court is duty bound to ascertain the legislative purpose by reference to the context and the legislative history. Illinois Cent. R. Co. v. Franklin County, *supra*; Brecht Corp. v. United States, 25 CCPA 9, T.D. 48977 (1937).

Considering first the context, a distinctive feature of headnote 1 is its juxtaposition of provisos that are comprehensive in scope with descriptive phrasing that is narrow and limiting in nature. Thus, the definition is almost totally unrestricted as to *place* of use, i. e., "used to equip dwellings, offices * * * or other establishments, aircraft, vessels * * * or other means of transport, gardens, patios * * * or similar outdoor places". By way of contrast, however, the *kinds* of items to be included are specifically described as "movable articles of utility, designed to be placed on the floor or ground". This description is, in turn, expressly modified by two exceptions: (1) the term "movable articles" does not exclude such items "*even though* * * * designed

---

3. The court stated in *Montello Salt*, 221 U.S. at 466, 31 S.Ct. at 709:

* * * The court also considered that the word "including" was used as a word of enlargement, the learned court

being of opinion that such was its ordinary sense. With this we cannot concur. It is its exceptional sense, as the dictionaries and cases indicate. * * *

to be screwed, bolted, or otherwise fixed in place on the floor or ground"; and (2) the phrase "designed to be placed on the floor or ground" does not exclude certain enumerated articles, viz., kitchen cabinets and similar cupboards, seats and beds, and sectional bookcases and similar sectional furniture *"even though designed to be fixed to the wall or to stand one on the other"*. [Emphasis added.]

■■ The incorporation of these two exceptions within the terms of the headnote impels the conclusion that, when it adopted the proposed revised tariff schedules, Congress considered the general subject of exceptions to the description contained therein but expressly prescribed only those two. "The presence in the paragraph of an express exception to the classification conduces to the belief that no other exception thereto was intended by the legislature." United States v. Field & Co., 7 Ct.Cust.Appls. 430, 431, T.D. 36985 (1917). In short, if Congress had considered the phrase "movable articles of utility, designed to be placed on the floor or ground" as merely illustrative rather than restrictive, it would not have found it necessary to add the qualifying language. In other words, by coupling a specific description of articles to be included with express exceptions thereto, we must conclude that the legislature intended that all other articles be excluded.

This construction of the furniture definition is fully supported by the legislative history. The Tariff Classification Study, Schedule 7, November 15, 1960, which sets forth and explains the proposed revised tariff schedules, notes that subpart A of part 4 brings together the provisions which, in the Tariff Act of 1930, apply to most types of furniture, and states, p. 242:

The concept of furniture embraced in this subpart *is stated as a definition in headnote 1. * * *[4] [Emphasis added.]

We also note several cases which are analogous to that at hand. For example, in Application of Central Airlines, Inc., *supra*, 199 Okla. 300, 185 P.2d 919, 921, the question before the Supreme Court of Oklahoma was whether the Corporation Commission, which had constitutional authority to regulate transportation companies, had jurisdiction over air transportation by virtue of a provision in the State Constitution which read as follows:

Section 34. As used in this Article, the term "transportation company" shall include any company, corporation, trustee, receiver or any other person owning, leasing or operating for hire a railroad, street railway, canal, steamboat line, and also any freight car company, car corporation, or company, trustee or persons in any way engaged in such business as a common carrier over a route acquired in whole or in part under the right of eminent domain * * *.

The Commission contended that use of the words "shall include" preceding the specified classes constituted an enlargement and hence did not negative jurisdiction over classes not specified therein. The court disagreed, stating (185 P.2d at 923):

If, following the words "shall include", there had been named only classes not embraced within the meaning of the term "transportation company", thus reflecting only an addition to those otherwise included in the term, it would afford support to the contention. But since by express terms there are named subjects within the meaning of the term such conten-

---

4. The Tariff Commission's First Supplemental Report, January 1962, containing suggested changes in the schedules, proposed an amendment to the headnote under discussion in the following reference (p. 180):

In subpart A of part 4 of schedule 7 amend headnote 1 *(defining "furniture")* as follows:

\* \* \* \* \*

[Emphasis added in part.]

tion is foreclosed and it follows upon strength of the authorities relied on that the classes which are specifically named are to be read in connection with the meaning of the term "transportation company" which is general.

■ Relying upon the principle that words of general import in a statute are limited by words of restricted import immediately following and relating to the same subject, the court observed (185 P.2d at 924):

> The rule is based upon the obvious reason that if the lawmakers had intended the general words to be used in their unrestricted sense they would have made no mention of the particular classes. 59 C.J. 982, and cases cited.
>
> * * * And in absence of some clear showing that such conclusion is contrary to the legislative intent, to which rules of construction must yield * * * such restricted meaning must be deemed to reflect the legislative intent. Under this construction, the express declaration of what is to be included leaves no room for enlargement through implication.

Another analogous case is Television Transmission, Inc. v. Public Utilities Commission, *supra*, 47 Cal.2d 82, 301 P. 2d 862, 863, which involved the issue as to whether the Public Utilities Commission, which was given the power to regulate public utilities, had jurisdiction over community television antenna pursuant to the provision of the Public Utilities Code declaring that—

> " ' "Public utility" includes every common carrier, toll bridge corporation, pipe line corporation, gas corporation, electrical corporation, telephone corporation, telegraph corporation, water corporation, wharfinger, warehouseman, and heat corporation, where the service is performed for or the commodity delivered to the public or any portion thereof.' "

The court held that unless a community television antenna fell within one of the enumerated classes of public utili-

ties, the Commission had no jurisdiction over it, stating (301 P.2d at 863):

> Although "includes" is ordinarily not a word of limitation, People v. Western Airlines, 42 Cal.2d 621, 639, 268 P.2d 723, a legislative declaration that "public utility" includes those performing certain enumerated services is not a declaration that those performing other services, not encompassed by the services enumerated, are public utilities.

In Schauf v. City of New York, 23 Misc.2d 585, 198 N.Y.S.2d 435, 438 (1960), the question arose as to whether the owners of a building had a statutory duty under the city's Multiple Dwelling Law to provide a handrail for steps leading from the entrance floor to the basement. The law provided, at the time the building was erected, that—

> In every multiple dwelling * * * every stair * * * shall be provided with a handrail on each side.

and that—

> A "stair" includes the stair landings and those portions of a public hall through which it is necessary to pass in going between the entrance floor and the roof.

The court held that the stairway in question was beyond the ambit of the statutory definition, noting (198 N.Y.S. 2d at 438):

> * * * The word "includes" must be construed as eliminating any other area. Specific mention of one person or thing implies the exclusion of other persons or things. [Citing cases.]
>
> By specifying particular areas, it necessarily follows that the Legislature intended that all other places be excluded.

■ Accordingly, we find that headnote 1 is exclusionary and restrictive and that item 727.10, which is governed by that headnote, embraces only those articles described therein. See Sankyo-

dai Corp. v. United States, 62 Cust.Ct. 630, C.D. 3837 (1969).[5]

■ Further, we find (and this is not seriously disputed by plaintiff) that the hanging chairs in question do not come within the purview of the headnote since they are not designed to be placed on the floor or ground or to be fixed to the wall.

■ In passing, we note that whether or not Congress intentionally excluded hanging articles from the furniture definition, the court must construe the law as it was written and not according to how the court may think it ought to be. It is the province of the court to declare what the law is and not to anticipate legislative action nor to supply omissions of the legislative body. Grant & Co. (Inc.) v. United States, 12 Ct.Cust. Appls. 215, T.D. 40227 (1924). As pointed out by Judge Watson in Armbee Corporation et al. v. United States, 60 Cust.Ct. 105, 110, C.D. 3278, 279 F.Supp. 438, 442 (1968), "[t]he courts are bound to determine the intent of Congress by the language which was actually used and have no right to give any meaning to such language other than that conveyed by the words, terms, or expressions in which the legislative will was expressed."

The protest is overruled and judgment will be entered accordingly.

5. We are quite mindful of the fact that in The American Import Co., et al. v. United States, 62 Cust.Ct. 486, C.D. 3807 (1969), the court stated that "by use of the word 'includes' followed by several enumerations, [headnote 1] was merely intended by Congress to extend the meaning to be ascribed to the term 'furniture,' and not to restrict its meaning as judicially determined." Id. at 489. However, in its more recent decision in Sprouse Reitz & Co., et al. v. United States, 67 Cust.Ct. 209, C.D. 4276 (1971), the court pointed out that this statement in *American Import* with respect to headnote 1 was *obiter dictum.* It is to be added that in *Sprouse Reitz* the court noted that "[n]o case has been found which has squarely passed upon the question whether the headnote which pertains to the term 'furniture' constitutes a statutory definition." *Id.* at 213. Further, the court in *Sprouse Reitz* found it unnecessary to pass upon this question since it found that the import in issue was not furniture either under the common meaning or the headnote.