ABBEY RENTS

v.

UNITED STATES.

C.D. 4720;  Court No. 76–2–00517.

United States Customs Court.

Nov. 28, 1977.

Glad, Tuttle & White, Los Angeles, Cal. (Edward N. Glad, Los Angeles, Cal., of counsel), for plaintiff.

Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C. (Alan L. Langus, trial attorney, Washington, D. C.), for defendant.

LANDIS, Judge:

The merchandise in this case consists of A–BEC 12 and A–BEC 14 motorized wheelchairs imported from Great Britain and Canada into the port of Los Angeles in 1975 and classified under item 727.55 of the Tariff Schedules of the United States (TSUS), which provides as follows:

SCHEDULE 7.—SPECIFIED PRODUCTS; MISCELLANEOUS AND NONENUMERATED PRODUCTS

Part 4.—Furniture; Pillows, Cushions, and Mattresses; Nontextile Floor Coverings

\* \* \* \* \* \* \*

Furniture, and parts thereof, not specially provided for:

| | | |
|---|---|---|
| \*\*\* | Of unspun fibrous vegetable materials . . . . . . . . . . . . . . . . . . | \*\*\* |
| | Of wood: | |

\* \* \* \* \* \* \*

| | | |
|---|---|---|
| \*\*\* | Of textile materials, except cotton . . . . . . . . . . . . . . . . . . | \*\*\* |
| | Of rubber or plastics: | |
| \*\*\* | Of reinforced or laminated plastics . . . . . . . . . . . . . . . . | \*\*\* |
| \*\*\* | Other . . . . . . . . . . . . . . . . . . | \*\*\* |
| \*\*\* | Of copper . . . . . . . . . . . . . . . . . . | \*\*\* |
| 727.55 | Other . . . . . . . . . . . . . . . . . . . . . . | 10% ad val. |

Plaintiff claims that motorized wheelchairs are properly classifiable under TSUS item 692.10, which provides as follows:

SCHEDULE 6.—METALS AND METAL PRODUCTS

Part 6.—Transportation Equipment

\* \* \* \* \* \* \*

Subpart B.—Motor Vehicles

\* \* \* \* \* \* \*

Motor vehicles (except motorcycles) for the transport of persons or articles:

\* \* \* \* \* \* \*

| | | |
|---|---|---|
| 692.10 | Other . . . . . . . . . . . . . . . . . . . . . . | 3% ad val. |

Defendant seeks to blunt plaintiff's claim with an alternative claim that if the motorized wheelchairs are not dutiable under TSUS item 727.55 as classified, they are properly classifiable under TSUS item 727.-04, which provides as follows:

SCHEDULE 7.—SPECIFIED PRODUCTS; MISCELLANEOUS AND NONENUMERATED PRODUCTS
Part 4.—Furniture; Pillows, Cushions, and Mattresses; Nontextile Floor Coverings

\* \* \* \* \* \* \*

Furniture designed for hospital, medical, surgical, veterinary, or dental use; dentists', barbers' and similar chairs with mechanical elevating, rotating, or reclining movements; and parts of the foregoing:

| | | |
|---|---|---|
| 727.02 | Dentists', barbers' and similar chairs with mechanical elevating, rotating, or reclining movements, and parts thereof ................ | \*\*\* |
| 727.04 | Other ...................... | 8.5% ad val. |

Defendant bears the burden of establishing this alternative claim. As this court stated in *J. M. Rodgers Co., Inc. v. United States,* C.D. 3084, 273 F.Supp. 442, 59 Cust.Ct. 91 (1967) (*rehearing granted on other grounds,* 60 Cust.Ct. 42, C.D. 3251 (1968)): "Where defendant asserts a claim in defense, different from the liquidation classification, the burden is on defendant to prove it." *J. M. Rodgers,* 273 F.Supp. at 445, 59 Cust.Ct. at 95.

Defendant basically argues that the imported motorized wheelchairs are "furniture", a term which for tariff purposes is defined in TSUS schedule 7, part 4, subpart A, as follows:

*Subpart A headnote:*

1. For the purposes of this subpart, the term "*furniture*" includes movable articles of utility, designed to be placed on the floor or ground, and used to equip dwellings, offices, restaurants, libraries, schools, churches, hospitals, or other establishments, aircraft, vessels, vehicles, or other means of transport, gardens, patios, parks, or similar outdoor places, even though such articles are designed to be screwed, bolted, or otherwise fixed in place on the floor or ground \* \* \*.

This court has held the above headnote exclusionary and restrictive, and embracing only such articles as are expressly described therein. *Karoware, Inc. v. United States,* C.D. 4681, 427 F.Supp. 402, 77 Cust.Ct. 112 (1976), *aff'd* C.A.D. 1197, 564 F.2d 77, 65 CCPA —— (1977); *Morris Friedman & Co. v. United States,* C.D. 4392, 351 F.Supp. 611, 69 Cust.Ct. 184 (1972). Quite obviously, as defendant puts it, A–BEC motorized wheelchairs are "chairs" of a sort, at least in the general sense of that term as a seat that a person can conveniently sit on. *Decorative Imports v. United States,* 43 Cust.Ct. 31, C.D. 2099 (1959). But I am unable to subscribe to defendant's view that motorized wheelchairs are "furniture" as that term is defined in TSUS, *supra.* In that regard, I am not inclined to quarrel with defendant's point that motorized wheelchairs would, in ordinary sense and understanding, be considered movable articles of utility, designed to be placed on the floor or ground. But in ordinary sense, it is not commonly understood that motorized wheelchairs are used to equip dwellings, offices, restaurants, libraries, schools, churches, hospitals, gardens, patios, parks or similar outdoor places. Three witnesses testified for defendant. Not one of them testified that motorized wheelchairs are used to equip dwellings or hospitals in the common and ordinary sense projected by the definition.

One of defendant's witnesses, Mr. Glen E. Burrer, disabled for 24 years, appeared confined and seated in an A–BEC motorized wheelchair. Testifying that he had become keenly aware of power-driven chairs about 15 years ago, he stated as follows:

Q. Now, what is the purpose of motorized wheelchairs? Isn't it to make people mobile, the handicapped people mobile?—A. Yes.

Q. In other words, it is not used as one would use a piece of furniture?—A. Describe what you mean by "piece of furniture?"

Q. Well, I point to this chair, I point to this table, I point to this chair and bench (indicating). These are what I think to be furniture. Would you use the

motorized wheelchair in the same way as you would use these chairs?—A. No.

Q. Why not?—A. Because I couldn't take that chair and get from my office to my Personnel Department.

Q. So you are using it as a vehicle to get from one point to another?—A. That is right. [R. 102.]

To cut short the obvious, therefore, motorized wheelchairs are not ordinarily used to equip any of the places enumerated in the definition. What they are designed for, as all the witnesses testified, are people, disabled people who, for whatever reason, have very limited or severe involvement in the lower extremities and in the upper extremities to an extent that they cannot propel the hand rims on a standard self-propelled wheelchair. (R. 46.) Defendant's statement that given the design and speed limitations of the imported motorized wheelchairs they must be and are used within the structures and limited areas surrounding the structures set forth in the TSUS definition of "furniture" does not, as it is meant to suggest, establish that they are used to equip the places described in the definition.

Defendant's alternative claim, that the imported motorized wheelchairs are classifiable as furniture, designed for hospital and medical use (TSUS item 727.04), is inapplicable for substantially the same reasons. Motorized wheelchairs are designed for use by disabled people. There is no evidence that they are designed for use in hospitals nor that they are used by a doctor in the practice of medicine.

Defendant contends, with respect to its burden of proof on the alternative claim, that it is enough that the record establishes that motorized wheelchairs are usually sold by firms in the business of selling medical equipment; also that they are medically prescribed for patients who, for whatever reason, cannot or should not use a self-propelled wheelchair. That proof, however, is not probative of what this court has held,

namely, that the term "furniture" embraces only such articles as are expressly described therein which, for purposes of this case, means articles designed and used to equip hospitals, medical offices, and the like.[1] Brussels Nomenclature heading 94.02, which defendant concedes is strikingly similar to TSUS item 727.04, supports this view in its comment of the heading as follows:

> 94.02—MEDICAL, DENTAL, SURGICAL OR VETERINARY FURNITURE (FOR EXAMPLE, OPERATING TABLES, HOSPITAL BEDS WITH MECHANICAL FITTINGS); DENTISTS' AND SIMILAR CHAIRS WITH MECHANICAL ELEVATING, ROTATING OR RECLINING MOVEMENTS; PARTS OF THE FOREGOING ARTICLES.
>
> (A) FURNITURE DESIGNED FOR VETERINARY, MEDICAL, SURGICAL, OR DENTAL PRACTICE

This includes:

\*   \*   \*   \*   \*   \*   \*

> (10) Stretchers and trolley-stretchers for moving patients inside hospitals, clinics, etc. _Invalid carriages used to carry invalids in the street are excluded_ (Chapter 87). [Emphasis added.] [Brussels Nomenclature (1955), volume III, pages 1147–1148.]

The testimony in this case additionally establishes that the motorized wheelchairs in this case[2] are lightweight portable wheelchairs; that they can proceed to speeds up to four miles per hour; that they are used both indoors and outdoors; that, except for crossing streets and intersections, they are suitable for highway or street travel as such; that the chairs give people who cannot walk a certain amount of independence and ability to get from place to place without assistance, and that:

The basic frame is of aluminum construction and is equipped with two drive wheels. Each wheel has its own gear box and electric motor. The power source is from a wet lead acid battery which is supported on the frame or chassis, and the control is effected through a control box either mounted on the left-hand or right-hand side. The control box is designed to give a function of direction, speed, and braking. The frame is

---

1. Defendant's brief, page 30, footnote 10.

2. Exhibit 1 has a rear-wheel drive; exhibit 2 has a front-wheel drive.

**544**

equipped with a PVC material seat which the user would sit upon and a back rest. [R. 9.]

The above testimony together with the actual material in evidence,[3] in my opinion, establishes that the imported wheelchairs are in the unlimited tariff sense provided for in TSUS—"Motor vehicles * * * for the transport of persons". Defendant has argued they are not highway motor vehicles and require no highway registration. On that point, it is enough that the tariff classification does not specify motor vehicles for the transport of persons on highways or motor vehicles duly registered for highway travel.

I might note that the administrative rulings of the Treasury Department on vehicles of special design and purpose in the manner of the imported motorized wheelchairs support my own conclusion (*Lyons Export & Import, Inc. v. United States,* C.A.D. 1056, 461 F.2d 830, 832, 59 CCPA 142, 145 (1972), viz.: 2 Cust.Bull. 271, T.D. 68–133(11) (1968)):[4]

*Motor vehicles. Golf Trolley.*—An automatic self-propelled electric golf trolley, fitted with a 12 volt battery and electric motor providing a two-speed forward movement and resembling in appearance the conventional golf cart, is classifiable under the provision for Motor vehicles (except motorcycles) for the transport of persons or articles: * * * Other, in *item 692.10,* TSUS. * * *

Plaintiff's claim under TSUS item 692.10 is sustained. Judgment will enter accordingly.

3. Exhibit 1—advertisement showing picture of the A–BEC 14 motorized wheelchair.
   Exhibit 2—advertisement showing picture of the A–BEC 12 motorized wheelchair.
   Exhibit 3—illustration of a motorized wheelchair.
   Exhibit 4—frontispiece and page 67 of magazine entitled "Accent on Living".

4. See also, 4 Cust.Bull. 299, T.D. 70–130(8) (1970), rulings on passenger vehicle for off-highway use; 3 Cust.Bull. 531, T.D. 69–209(18) (1969); 101 Treas.Dec. 437, T.D. 66–157(24) (1966), ruling on a vehicle in the configuration of a child's scooter, designed to carry one or

two persons around a plant, operated on a rechargeable battery; 100 Treas.Dec. 826, T.D. 56535(112) (1965), ruling toboggan-type vehicles are classifiable as motor vehicles "as the term 'vehicle' encompasses any moving support or container for the conveyance of persons or articles"; 101 Treas.Dec. 292, T.D. 66–94(48) (1966), ruling on metal shopping carts similar to those used in supermarkets and grocery stores. ORR Ruling 632–69, December 24, 1969, Bureau File TE 536 V, July 7, 1969, ruling "electro drive" wheelchairs classifiable under item 692.10 TSUS.