**The UNITED STATES, Appellant,**

v.

**David E. PORTER, Appellee.**

**No. 80–32.**

United States Court of Customs and Patent Appeals.

March 12, 1981.

Alice Daniel, Asst. Atty. Gen., Washington, D. C., David M. Cohen, Director, Joseph I. Liebman, New York City, Attorney in charge, Madeline B. Kuflik, New York City, of counsel, for appellant.

Barry E. Cohen, Washington, D. C., for appellee.

Before MARKEY, Chief Judge, and RICH, BALDWIN, MILLER, and NIES, Judges.

MARKEY, Chief Judge.

The Government appeals from the judgment and order of the United States Customs Court (now the Court of International Trade),[1] sustaining David E. Porter's (Por-

---

1. Reported at 82 Cust.Ct. 259, C.D. 4808, 475 F.Supp. 688 (1979); an order amending the judgment is reported at 84 Cust.Ct. ——, C.D. 4857 (1980).

ter's) classification protest relating to imported rapid transit seats. Judge Landis held proper a classification under item 690.-40 (TSUS), parts of rail vehicles or cars, disapproving the classification under item 727.55 (TSUS), furniture and parts thereof not specially provided for (n.s.p.f.). We affirm.

## Background

Passenger seats designed to be permanently bolted to the walls of rail vehicles were imported from Brazil exclusively to equip the San Francisco Bay Area Rapid Transit (BART) rail vehicles. Porter protested classification under item 727.55 [2] and advanced a claim under item 690.40.[3] The U.S. concedes that the BART seats are parts of rail vehicles or cars, but argues that the furniture classification is the more specific and therefore controlling. Judge Landis, having found that both provisions described the merchandise, held the parts classification under item 690.40 preemptive of the residual classification under item 727.55 as a matter of law and entered summary judgment for Porter.

Forty-six days after judgment, Porter moved under Customs Court Rule 12.2 for an order amending that judgment, which was limited to transverse transit seats, to include window and longitudinal seats under the same classification, alleging that his motion inadvertently failed to include window and longitudinal seats. The motion to amend being denied, Porter appealed to this court.

Finding no "substantive distinction with regard to classification of a transverse seat versus a longitudinal or window seat," this

court remanded for reconsideration of the motion. Judge Landis adhered to his previous denial of the motion, but amended the judgment *sua sponte* to include longitudinal and window seats under item 690.40.[4] The Government has appealed the grant of summary judgment and the order amending that judgment.

## Issues

The issue is whether error occurred in (1) holding the merchandise properly classified under item 690.40, and (2) amending the judgment to include longitudinal and window seats.

## OPINION

### (1) Classification

The Government argues that: (1) Headnote 1 (727.55 TSUS) evidences a specific legislative intent to include rapid transit seats within the furniture classification; and, (2) If reference to Customs Service Rules of Construction were necessary to determine classification, item 727.55 (TSUS) more specifically describes the transit seats than item 690.40 (TSUS).

Porter maintains that the rapid transit seats in issue are not in the first instance classifiable under item 727.55, although if dual classification is possible, Porter contends that the "parts" provision of 690.40 is more specific and therefore prevails.

Interpretative Headnote # 1 (727.55 TSUS) provides in relevant part:

> For the purposes of this subpart, the term "furniture" includes movable articles of

**2.** Schedule 7, Part 4—Specified Products; Furniture and Parts Thereof, Not Specially Provided For:

727.55      Other             10% ad. val.

**3.** Schedule 6, Part 6, Subpart A—Metal and Metal Products Transportation Equipment; Rail Locomotives and Rolling Stock

    Parts of the Foregoing Articles

       \*   \*   \*   \*   \*   \*

    Other

       \*   \*   \*   \*   \*   \*

690.40  Other           5.5% Ad. Val.

(The term "foregoing articles" refers to "self-propelled rail vehicles designed to carry passengers or articles" and "Railroad and railway rolling stock; Passenger, baggage, mail freight and other cars, not self-propelled".)

**4.** *Upon remand, the parties were requested to submit memoranda on the differences in the characteristics of transverse seats and window or longitudinal seats. The parties agreed that there are none for classification purposes.*

utility, designed to be placed on the floor or ground, and *used to equip* dwellings, offices, restaurants, libraries, schools, churches, hospitals, or other establishments, aircraft, vessels, *vehicles, or other means of transport*, gardens, patios, parks, or similar outdoor places, even though such articles are designed to be screwed, bolted, or otherwise fixed in place on the floor or ground; and kitchen cabinets and similar cupboards, *seats* and beds, and sectional bookcases and similar sectional furniture, *even though designed to be fixed to the wall* or to stand one on the other. . . . [Emphasis ours.].

The Government cites *Parts Manufacturing Associates, Inc. v. U. S.*, 73 Cust.Ct. 42, C.D. 4552, 377 F.Supp. 1356 (1974), for the proposition that item 727.55 is a specific provision for furniture and parts thereof. In *Parts Manufacturing* the Customs Court held that floor-mounted aircraft seats were properly classifiable as furniture under item 727.55, rather than parts of aircraft under item 694.60. Because the Customs Court did not consider the n.s.p.f. qualification of item 727.55 (TSUS) in reaching its ruling, Porter suggests that decision was plainly erroneous.

■ We do not consider *Parts Manufacturing* controlling. That case is distinguishable in that seats affixed to the floor of aircraft are specifically covered by the headnote whereas the headnote clause relating to seats affixed to walls makes no mention of vehicles. There has been no showing of any specific Congressional in-

tent to include rail vehicles or rail cars under the headnote definition.

In *Albert E. Price, Inc. v. United States*, 60 CCPA 127, 129, C.A.D. 1095, 476 F.2d 1354, 1356 (1973), this court discussed the relevant headnote and approvingly quoted the Customs Court opinion below[5] as follows:

> . . . [T]he headnote discussion of furniture was, on its face, intended to certify the inclusion of furniture which was permanently fastened to the premises, either on the floor *or on the walls, as opposed to furniture which was moveable at will.* [Emphasis added.]

Other cases which concerned the scope of the headnote defining furniture are consistent with the discussion in *Price*.[6] Items determined to be beyond the scope of headnote # 1 include wine racks and bars,[7] rattan chairs[8] (suspended either from the ceiling or a post extending from the wall), and motorized wheelchairs.[9] That the BART seats are designed to be fixed to a wall does not alone render the exclusion of those items from classification as furniture inconsistent with classification of the BART seats under items 727.55.

Because the Government acknowledges that the BART seats are parts of rail vehicles or cars, and are therefore within the purview of item 690.40, the appropriate analysis is directed at determination of whether item 727.55 or 690.40 shall prevail.

The statutory presumption of correctness to which classification by the Customs Ser-

5. *Albert E. Price, Inc. v. United States*, 68 Cust.Ct. 50, C.D. 4334 (1972).

6. *Arthur J. Humphreys, Packard-Bell Electronics v. United States*, 59 Cust.Ct. 231, C.D. 3128, 272 F.Supp. 951 (1967), *aff'd*, 56 CCPA 67, C.A.D. 956, 407 F.2d 417 (1969); *Sankyodai Corp. v. United States*, 62 Cust.Ct. 630, C.D. 3837 (1969).

7. *Karoware, Inc. v. United States*, 77 Cust.Ct. 112, C.D. 4681, 427 F.Supp. 402 (1976), *aff'd*, 65 CCPA 1, C.A.D. 1197, 564 F.2d 77 (1977). Ability of wine racks and bars to be placed on the floor or hung from a wall *does not satisfy the requirement that the articles be designed* to be placed on the floor or fixed to the wall.

8. *Morris Friedman v. United States*, 69 Cust.Ct. 184, C.D. 4392, 351 F.Supp. 611 (1972). Hanging chairs were not designed to be placed on the floor or ground or to be fixed to the wall.

9. *Abbey Rents v. United States*, 79 Cust.Ct. 103, C.D. 4720, 442 F.Supp. 540 (1977), *aff'd*, 66 CCPA 2, C.A.D. 1213, 585 F.2d 501 (1978). In *Abbey* this court noted that no evidence presented established use of a motorized wheelchair solely as an article of furniture to the exclusion of its primary, mobility function.

vice is entitled, 28 U.S.C. § 2635(a), is balanced by General Interpretative Rule 10(c):

> [A]n imported article which is described in two or more provisions of the schedules is classifiable in the provision which most specifically describes it. . . .

Reviewing the status of the BART seats as "parts of rail vehicles," the trial court found:

> The "nature, function and purpose" of these BART seats conclusively show that they are parts of the rail vehicle. The seats are specifically designed for the BART cars and are incapable of being used for any other purpose. The seats cannot even be used as seats independent of the BART car. Once installed, the seats become an integral part of the vehicle. Finally, BART is incapable of functioning as intended without the seats.[10]

The nature, function and purpose of the seats argue for their classification under 690.40 as parts of rail vehicles.

The trial court held that the n.s.p.f. clause in the superior heading of item 727.-55 renders that item a "basket" provision which, as a matter of law, is inferior to the "parts" provision (690.40). The Government contests the significance of the n.s.p.f. clause and contends that item 727.55 is a specific provision for rapid transit seats, which is generalized by the n.s.p.f. clause only with respect to the specific materials of construction. That argument fails to recognize that the n.s.p.f. clause is found in the superior heading which precedes item 727.55 and numerous other classification items in the same furniture subpart. Item 727.55 is then further generalized by the absence of any limitation relating to materials.

Further guidance in determining which of the competing tariff provisions must prevail is provided by General Interpretative Rule 10(ij), which states that "a provision for 'parts' of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part."

■ An important and well established corollary to Rule 10(ij) is that "a provision for 'parts' is more specific than a provision for 'article, not specially provided for'," and therefore prevails over such a "basket" category. *Tariff Classification Study*, Seventh Supp. Report at 99 (U.S. Tariff Commission, 1963); *J. E. Bernard and Co., Inc. v. United States*, 62 Cust.Ct. 536, C.D. 3822, 299 F.Supp. 1129 (1969), *aff'd*, 58 CCPA 91, C.A.D. 1009, 436 F.2d 506 (1971).

The U.S. Tariff Commission has specifically declared that, "Item 727.55 is a 'basket' provision to cover all furniture of other materials,"[11] and the Customs Court has characterized item 727.55 as a residual provision because of the presence of the n. s. p. f. clause in the superior heading. *Sankyodai v. United States*, supra; *Arthur J. Humphreys, Packard-Bell Electronics v. United States*, supra.

In *Sankyodai* the Customs Court was faced with a situation analogous to the present case. The merchandise in question was wooden seats imported for use in connection with certain domestically manufactured boats. After considering the significance of the same furniture headnote which precedes item 727.35, the court held that the seats were properly classified as parts of yachts or pleasure boats rather than as furniture of wood, not specially provided for. The Customs Court reasoned that since the merchandise could be classified under a specific tariff provision for parts of yachts or pleasure boats, classification under a residual provision was preempted as a matter of law. 62 Cust.Ct. at 633.

We find no reason to depart from the rationale of *Sankyodai* as applied by the court below. Accordingly, we affirm the grant of summary judgment to Porter, clas-

---

10. The quotation of the nature, function and purpose of the merchandise was in reference to *Mattel Inc. v. United States*, 61 Cust.Ct. 75, C.D. 3531, 287 F.Supp. 999 (1968) which enunciated those considerations in determining whether an item is "part" of an article for tariff purposes.

11. Tariff Classification Study, Schedule 7, p. 243 (1960).

sifying the BART seats as parts of rail vehicles or cars under item 690.40 (TSUS).

(2) *Amendment of Judgment*

Rule 12.2(b) of the Court of International Trade provides:

*Amendment of Judgments*

(b) *Mistakes; Inadvertence; Excusable Neglect*: On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for mistake, inadvertence, surprise, or excusable neglect.

■ Rule 12.2(b) makes clear that a judgment may, in the court's discretion, be amended to achieve a just result.

■ The Government maintains that such discretion should be confined by the thirty day time limit of 28 U.S.C. § 2639.[12] That statute deals with retrials and rehearings, and no basis is seen for equating a motion thereunder with a motion to amend like that here involved.

■ Rule 12.2(b) is silent respecting the timeliness of a motion thereunder and the question has not previously been addressed. The first sentence of Federal Rules of Civil Procedure (FRCP) 60(b),[13] being substantially similar, provides guidance in the resolution of the timeliness question, although the Rules are expressly applicable only to the United States district courts. *Matter of N. C. Trading*, 586 F.2d 221, 231 (CCPA 1978).

Motions under FRCP 60(b), when based on mistake, inadvertence or excusable neglect, must be made within a "reasonable time," and in any case not more than one year after the judgment order or proceeding was entered or taken.

In view of the one year limitation on similar motions to amend a judgment under FRCP 60(b), we do not consider unreasonable the passage of 46 days in filing a motion to amend under CIT Rule 12.2. Moreover, the Government has demonstrated no actual prejudice resulting from the motion's filing 16 days after the 30 day period it views as permissible.

■ We therefore find no abuse of discretion in the trial court's grant of relief under Rule 12.2, amending the judgment to include all items encompassed in Porter's original protest, where those added items are admittedly indistinguishable for classification purposes.

Accordingly, the judgment and subsequent order amending that judgment are affirmed.

12. 28 U.S.C. § 2639 provides:

*Retrial or rehearing*

The judge who has rendered a judgment or order may, upon motion of a party or upon his own motion, grant a retrial or a rehearing, as the case may be. A party's motion must be made or the judge's action on his own motion must be taken, not later than thirty days after entry of the judgment or order.

13. FRCP 60(b), from which Rule 12.2(b) was derived, provides, in pertinent part:

Rule 60.
RELIEF FROM JUDGMENT OR ORDER
(b) Mistakes; Inadvertence; Exclusable Neglect; Newly Discovered Evidence; Fraud,

Etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud .... The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.