RHONE POULENC, INC.,
Plaintiff–Appellant,

v.

The UNITED STATES,
Defendant–Appellee.

88–1602.

United States Court of Appeals,
Federal Circuit.

July 14, 1989.

James A. Geraghty, of Donohue and Do-
nohue, New York City, argued for plaintiff-
appellant.

Joseph I. Liebman, of the Intern. Trade
Field Office, New York City, argued for
defendant-appellee. With him on the brief
were John R. Bolton, Asst. Atty. Gen.,
David M. Cohen, Director, and Mark S.

**1.** Briefs *amicus curiae* were filed by the Cus-
toms and International Trade Bar Association
and the Customs Law Committee of the Los
Angeles Bar Association.

Sochaczewsky, of the Civil Div., Dept. of
Justice.

Before MARKEY, Chief Judge,
SKELTON, Senior Circuit Judge, and
NIES, Circuit Judge.

MARKEY, Chief Judge.

Rhone Poulenc, Inc. (Rhone), appeals
from a denial of its motion to vacate an
order dismissing 12 actions then on the
trial court's suspension disposition calen-
dar. *Rhone Poulenc, Inc. v. United
States*, 694 F.Supp. 1579 (Ct. Int'l Trade
1988). The trial court held that it lacked
"jurisdiction" to grant the motion. We re-
verse and remand.[1]

*Background*

The involved civil actions had been sus-
pended pending the final disposition of
*Rhone Poulenc, Inc. v. United States*, 11
CIT ——, Slip Op. 87–75, 1987 WL 13266
(June 26, 1987). In that "test" case, the
trial court agreed with Rhone that synthet-
ic silica was classifiable duty-free under
item 523.11 TSUS. When that decision be-
came final, the involved actions were trans-
ferred to the "suspension disposition calen-
dar." By notice dated October 29, 1987,
the clerk of the court set April 30, 1988 as
the suspense date for removal from that
calendar. That date was 8 months after
the test case decision, rather than the 18
months permitted by the court's rule. The
parties actively pursued the customary pro-
cess of preparing stipulated judgments for
the suspended actions. Because the ac-
tions were not removed from the calendar
by the suspense date, they were dismissed
by the clerk on May 6, 1988.[2] On June 8,
1988, 33 days after the dismissal orders
were entered, Rhone moved under court
rule 60(b)(1) to vacate the dismissals and
restore the actions to the suspension dispo-
sition calendar.

The trial court concluded that *if* it had
power to grant equitable relief under court

**2.** Other actions by Rhone involving importa-
tions of synthetic silica and the same classifica-
tion issue were not dismissed and are not in-
volved in this appeal.

Rule 60(b), it would "find [Rhone] has an appropriate basis to set aside the dismissal orders," and that "[t]he interests of justice strongly support settlement between the parties," citing *W.R. Filbin & Co. v. United States,* 11 CIT ——, Slip Op. 87–134, 1987 WL 27607 (Dec. 9, 1987). 694 F.Supp. at 1583. The court held, however, that it could not grant Rhone's motion because the United States Court of Customs and Patent Appeals (CCPA) had held in *United States v. Torch Manufacturing Co., Inc.,* 509 F.2d 1187 (CCPA 1975) that the predecessor United States Customs Court lacked jurisdiction to do so. 694 F.Supp. at 1583.

### Issue

Whether the Court of International Trade has power to grant Rhone's motion.

## OPINION

### Introduction

With this case, the United States Court of International Trade passes another milestone in its march toward full maturity within the federal judiciary. It is a national court under Article III of the Constitution, having evolved from the Board of General Appraisers and the Customs Court. With nationwide geographic jurisdiction, its members have traditionally been appointed from the various States and have held court at places throughout the nation. Its Chief Judge sits as a member of the Judicial Conference of the United States and its members serve on committees of that Conference. Under designation by the Chief Justice, its members sit on the federal district and appellate courts. In the Customs Courts Act of 1980, Pub.L. 96–417, 94 Stat. 1727 (Oct. 10, 1980) (Act), Congress advanced the maturing process when it granted the court "all the powers in law and equity of, or as conferred by statute upon, a district court of the United States." 28 U.S.C. § 1585 (1982). The legislative history contains the statement that the Act "perfects the status" of the court "by providing it with all the necessary remedial powers in law and equity possessed by other federal courts established under Article III of the Constitution." H.R.Rep.

No. 96–1235, 96th Cong., 2d Sess. 18–20 (1980), *reprinted in* 1980 U.S.Code Cong. & Admin.News 3729–3731. We hold here that that grant and that statement mean precisely what they say.

### Jurisdiction

At the heart of this case lies an indiscriminate use of the naked term "jurisdiction." Use of that term unmodified has frequently provided fertile ground for the growth of obfuscation. Assuming the presence of a constitutionally required case or controversy, federal court jurisdiction comes in many shapes and sizes; hence understanding frequently requires an adjectival modifier. There are significant distinctions, for example, between subject matter jurisdiction, in personam jurisdiction, in rem jurisdiction, geographic jurisdiction, diversity jurisdiction, and pendent jurisdiction. Similarly, a distinction is required between the question of whether a court has subject matter jurisdiction as defined by Congress and the question of whether a plaintiff has failed to state a claim or lacks standing to invoke that jurisdiction. A further distinction exists between a court's subject matter jurisdiction and its inherent powers, i.e., those incidental powers necessary and proper to an exercise of that jurisdiction. Lastly, and most important for our purposes here, there is a fundamental distinction between a court's subject matter jurisdiction and its equitable powers. The former must exist before the latter may be exercised. The former concerns the authority of a court to hear and decide, given the subject matter of the case; the latter concerns the remedial relief a court having that authority may grant.

Failure to recognize the last-named distinction is illustrated by the trial court's use throughout its analysis, and by the government's use throughout its brief here, of only the naked term "jurisdiction". The distinction is blurred also by the use in some quarters of the mongrelized phrase "equity jurisdiction". In an effort to diffuse the potential for confusion, the Court of International Trade (Re, C.J.) said this in

*American Air Parcel Forwarding Co. v. U.S.*, 515 F.Supp. 47, 51 (Ct. Int'l Trade 1981):

> Jurisdiction, the power to decide a case presented for adjudication, should not be confused with a court's so-called "equity jurisdiction". When a court has jurisdiction over the subject matter and the parties, it has the power to decide the case, and "equity jurisdiction" can only refer to its authority and discretion to grant equitable relief. The words refer to those types or classes of cases formerly heard by courts of equity, as distinguished from the ordinary courts of law. In view of the merger of law and equity, the courts may grant any proper relief whether formerly denominated legal or equitable. Hence, to say that a court has "equity jurisdiction" is merely to say that it is authorized to exercise those equitable powers formerly devised or exercised by courts of equity. As a practical matter, it implies that a court is authorized to grant or withhold any of the equitable remedies.

It cannot be disputed that under 28 U.S.C. § 1581 the trial court has subject matter jurisdiction here. It properly exercised that subject matter jurisdiction in deciding the test case, and, if the 12 actions here involved are removed from the suspension disposition calendar, it will properly exercise that same subject matter jurisdiction in disposing of them. Hence no question of *that* "jurisdiction" is here presented. And, because 28 U.S.C. § 2646 does not apply to a court rule 60(b) motion, no question of

statutory time limitation on the exercise of jurisdiction is present. The true and only question on this appeal is whether the trial court has the power to grant the equitable remedy sought by Rhone's motion.

### Trial Court Analysis

Exhibiting what would in a proper case be admirable restraint and adherence to precedent, the trial court reasoned that it lacked "jurisdiction" because: (1) 28 U.S.C. § 2646 (1982)[3] requires that a motion "for retrial or rehearing" be brought within 30 days of the judgment or order; (2) 28 U.S.C. § 2646 is substantively identical to the provision, 28 U.S.C. § 2639, held in *Torch*, 509 F.2d at 1187, to be jurisdictional, and (3) the trial court's Rule 60(b)[4] does not "independently confer jurisdiction" because "no court rule can enlarge or restrict jurisdiction." 694 F.Supp. at 1581–83. The court further reasoned that (4) relief is not available under 28 U.S.C. § 1585 or 28 U.S.C. § 2643(c)(1)[5] because "those statutes cannot independently confer jurisdiction where none otherwise exists" and no court "can exercise equitable powers where jurisdiction does not lie." 694 F.Supp. at 1583.

### (1) 28 U.S.C. § 2646

It is useful, always, to remain cognizant of the matter at hand. The present appeal involves no substantive law, but only the ministerial, housekeeping, docket-managing function of the trial court. When there are actions filed in relation to numerous importations of essentially the same product, one

---

**3.** 28 U.S.C. § 2646 reads:

> After the Court of International Trade has rendered a judgment or order, the court may, upon the motion of a party or upon its own motion, grant a retrial or rehearing, as the case may be. A motion of a party or the court shall be made not later than thirty days after the date of entry of the judgment or order.

**4.** Court rule 60(b) reads in pertinent part:

> On motion of a party ... the court may relieve a party or his legal representative from a final judgment, order, or proceedings for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect, ....
> The motion shall be made within a reasonable time, and for [reason of mistake, inad-

vertence, surprise, or excusable neglect] not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation.

**5.** 28 U.S.C. § 2643(c)(1) reads:

> Except as provided in paragraphs (2), (3), and (4) of this subsection, the Court of International Trade may, in addition to the orders specified in subsections (a) and (b) of this section, order any other form of relief which is appropriate in a civil action, including but not limited to, declaratory judgments, orders of remand, injunctions, and writs of mandamus and prohibition.

action is selected as a "test case" and tried, and the others are placed on the "suspension disposition calendar." The court is normally thereafter not involved with the "suspended" actions. As above indicated, the suspended actions are removed from the calendar by the clerk upon receipt of stipulations by the parties.[6] Actions not timely removed from the calendar are dismissed by the clerk. Rhone's motion under court Rule 60(b) thus sought relief from a dismissal order issued by the clerk under court rule 85(d).[7]

Rhone's was clearly and inescapably *not* a motion for "retrial or rehearing".[8] The statute, 28 U.S.C. § 2646, and court rule 59 remain intact and applicable to motions for retrial or rehearing. Neither the statute nor the rule, however, says anything whatever about "jurisdiction" or about a time period during which one must file a motion for relief in the form of restoration of actions dismissed by the clerk under the court's rule 85(d). When Rhone filed its motion, there had never been a "trial" or "hearing" on the clerk's order or on whether it should be vacated. Nor had there been a trial or hearing in any of the 12 suspended cases. Nor was there either opportunity or reason for such a trial or hearing before the clerk entered his order. It is at best difficult, therefore, to conceive of a present-day basis for labeling or treating Rhone's motion, filed under the court's rule 60(b) and seeking equitable relief from

a ministerial order, as one for either *re*trial or *re*hearing.[9]

In *Bio–Rad Laboratories, Inc. v. United States*, 687 F.Supp. 1580–81 (Ct. Int'l Trade 1988) another judge of the Court of International Trade said:

> In the opinion of the Court the terms of 28 U.S.C. § 2646 apply to the rehearings available under Rule 59, namely, rehearings which are directed to issues which were treated, revealed, or advanced in the original trial, decision or judgment. For that sort of motion, i.e., to rehear what has been done in plain sight, a limit of 30 days is proper. But for the motion made under Rule 60 and based on reasons which often depend on the discovery of hidden mistakes, frauds, or other causes of injustice, which cannot be expected to be uncovered immediately after judgment, it would be absurd and unfair to apply the 30 day statutory limit of 28 U.S.C. § 2646. It would be equally absurd to attribute such an intention to Congress.

There is thus a direct conflict between the reasoning in *Bio–Rad* and that in the case *sub judice*. The trial court here noted that reasoning but simply dismissed it with the statement: "The Court finds the controlling law is that expressed in *Torch*" which "states the 30 day time period is a jurisdictional matter" and "is a binding

---

**6.** Though not reflected in the record, there are, presumably valid reasons for not simply disposing of the suspended actions on the basis of the decision in the "test" case.

**7.** Court rule 85(d) reads:
> An action not removed from the Suspension Disposition Calendar within the established period shall be dismissed for lack of prosecution, and the clerk shall enter an order of dismissal without further direction of the court, unless a motion is pending.

**8.** In *United States v. Porter*, 645 F.2d 52, 57 (CCPA, 1981), the court rejected the government's effort to assert § 2639 as a bar to a motion to amend a judgment brought under the court's rule 12.2, a predecessor of its rule 60(b):
> The Government maintains that such discretion should be confined by the thirty day limit of 28 U.S.C. § 2639. That statute deals with retrials and rehearings, and no basis is

seen for equating a motion thereunder with a motion to amend like that here involved.

In *Porter*, the CCPA also presaged our rejection here of the government's notion that case law dealing with the Federal Rules of Civil Procedure cannot be looked to in applying corresponding rules of the Court of Internal Trade:
> In view of the one year limitation on similar motions to amend a judgment under FRCP 60(b), we do not consider unreasonable the passage of 46 days in filing a motion to amend under CIT Rule 12.2.

*Id.*

**9.** Repeatedly in the government's brief appears the unexplained, fiat-like statement that Rhone's motion is "in effect a request for rehearing." Nothing here said would authorize the Court of International Trade to grant an actual motion for retrial or rehearing filed more than 30 days after the date of entry of a judgment or order. 28 U.S.C. § 2646.

precedent". 694 F.Supp. at 1583.[10] The trial court did not consider whether *Torch* had been overruled by Congress and said nothing about whether 28 U.S.C. § 1585 had any effect on *Torch*. Employment of the application in *Torch* of 28 U.S.C. § 2639 (predecessor of § 2646) as the foundation stone of the trial court's analysis renders necessary a discussion here of whether *Torch* remains a viable precedent governing motions of the type filed by Rhone.

### (2) Torch

In *Torch*, the Customs Court granted a motion to restore an action to the Reserve File (predecessor of the suspension disposition calendar). The CCPA reversed, noting the truism that a court may not enlarge its own "jurisdiction". 509 F.2d at 1189. The CCPA recognized the continuity of the 30–day limit for motions for rehearing or retrial in quoting § 518 of the Tariff Act of 1922 (applicable to the Board of Appraisers), 28 U.S.C. § 2640, and its virtually identical successor 28 U.S.C. § 2639. Because the Customs Court was known to lack equitable powers,[11] and there was at the time no court rule 60(b), the CCPA was forced to employ the legal fiction that à motion to vacate and restore was a motion to rehear, to look only to § 2639, and to speak in only "jurisdictional" terms.

Though couched in "jurisdictional" terms, the holding in *Torch* turned on the Customs Court's lack of equitable power. Noting the government's acknowledgment of the merits of plaintiff's claim and stating that the equities favored plaintiff, the CCPA nonetheless concluded in *Torch* that the Customs Court "had no power" to "cure" plaintiff's failure to comply with § 2639 and suggested that "relief on the basis of such equities" must come from "legislation in the Congress." *Id.* at 1192.

The "power to cure" found missing in *Torch* has now been supplied by "legislation in the Congress." As above indicated, Congress has expressly and unequivocally provided that "The Court of International Trade shall possess all the powers in law and equity of, or as conferred by statute upon, a district court of the United States." 28 U.S.C. § 1585.[12] It is not and cannot be disputed that a district court has the power in equity to grant, under Rule 60(b), Fed.R. Civ.P., the type of relief Rhone seeks. Under Section 1585, the Court of International Trade now has that same power in equity. Thus, as not infrequently occurs in the field of international trade, Congress has acted to fill a gap in the law identified in a court holding, *see*, e.g., *United States v. Zenith Radio Corp.*, 562 F.2d 1209, 1216, n. 13 (CCPA 1977), *aff'd*, 437 U.S. 443, 98 S.Ct. 2441, 57 L.Ed.2d 337 (1978), and, upon enactment of § 1585, *Torch* became no longer a viable precedent.[13] The trial court

---

**10.** The trial court nowhere mentioned the 1986 Report of its Committee on Rules and Practice (Rules Committee Report). In recommending that the time in which to move under Rule 60(b) be increased from 30 days to the one-year found in the Federal Rule, the Committee set forth the same distinction later made in *Bio–Rad*. Rules Committee Report at 2. It also distinguished *Torch* as having been decided before the court was granted equitable powers. Id. at 3–4. The Committee's recommendation was adopted by the full court and its rule 60(b) was amended. A court committee report is not the equal of a controlling court decision, yet to ignore it as though it had never been rendered and adopted would appear to undermine institutional integrity without compensating benefit of any kind to anyone.

**11.** It had long been so held. *See Matsushita Electric Industrial Co., Ltd. v. United States Treasury Department et al.*, 67 Cust.Ct. 328, C.D. 4292 (1971), *aff'd*, 485 F.2d 1402, 60 CCPA 85, C.A.D. 1083 (1973), *cert. denied* 414 U.S. 821, 94 S.Ct.

117, 38 L.Ed.2d 53; *Eurasia Import Co., Inc. v. United States*, 31 CCPA 202, C.A.D. 273 (1944); *Jacksonville Paper Co. v. United States*, 30 CCPA 159, C.A.D. 228 (1943), *cert. denied*, 320 U.S. 737, 64 S.Ct. 36, 88 L.Ed. 436.

**12.** The government here suggested that Rhone seek relief from Congress. As indicated in the text, the government simply disregards the congressional grant of authority to grant precisely the equitable relief Rhone seeks in this case.

The view expressed in *Torch*, that case law on the Federal Rules is not applicable to rules of the Court of International Trade, cannot survive the enactment of § 1585 and the adoption by the court of rules corresponding as nearly as possible to the Federal Rules.

**13.** Congress having acted, it is not necessary that this court act *in banc* as envisaged in *South Corp. v. United States*, 690 F.2d 1368, 1370 n. 2 (Fed.Cir.1982). The same is true in respect of *United States v. Consolidated Merchandising Co.*, 527 F.2d 640 (CCPA, 1976).

therefore erred in finding that *Torch* expressed "the controlling law."

### (3) Rule 60(b)

The trial court stated that court rule 60(b) does not "independently confer jurisdiction." That rule 60(b) does not confer subject matter jurisdiction is a truism. It is also irrelevant. Simply stated, rule 60(b) has nothing to do with conferring "jurisdiction"; it has to do with, and only with, the exercise of a court's equity power.

As clearly stated in its first sentence, rule 60(b) deals with a court's power to "relieve a party" from a final "judgment, order, or proceedings." An exercise of that power thus occurs only after a court has completed a trial or proceeding over which it had, or thought it had, subject matter jurisdiction, and only after it has entered a final judgment or issued a final order. The power to relieve a party from a final judgment or order is quintessentially and obviously a power to do equity and a court's decision on a 60(b) motion is governed by equitable principles. *See* C. Wright and A. Miller, *Federal Practice and Procedure*, § 2857 at 158–59 (1973) (and cases cited therein); *DeVito v. Fidelity and Deposit Company of Maryland*, 361 F.2d 936, 939 (7th Cir.1966).

If a court has power to relieve a party from a final judgment entered by the court on completion of a trial on the merits, it would appear at best incongruous to suggest that that same court lacks power to relieve a party from a clerk's ministerial order dismissing an action.[14]

Before us, the government repeats the trial court's truism that "the CIT cannot enlarge its jurisdiction by its own rules".

The government also parrots the trial court's view that court rule 60(b) cannot be equated with Rule 60(b), Fed.R.Civ.P. because the latter renders "all laws in conflict with such rules" of "no further force or effect." 28 U.S.C. § 2072. The analysis of the trial court and the government is thrice flawed: (1) as above indicated, rule 60(b) is unrelated to "jurisdiction" and the analysis ignores its own false corollary (that Federal Rule 60(b) does "enlarge the jurisdiction" of the district courts); (2) the analysis begs the question in assuming that the court's rule 60(b) is in "conflict" with some unidentified "law" (presumably Section 2646); and (3) the analysis disregards its necessary consequence, i.e., the nullifying of court rule 60(b) and the stultifying of the statutory grant of equitable powers, Section 1585, on which that rule rests.[15]

Court rule 60(b) was legitimately promulgated, following Congress' grant of equity powers in 28 U.S.C. § 1585. Hence the government's *sub silentio* effort to gut that rule of all meaning (because "the Federal Rules are applicable only to the district courts") goes beyond the bounds of legitimate advocacy. It is also short-sighted, the rule being neutral and of equal benefit to the government in a proper case.

Indeed, the government's effort here to confine and cabin the rule-making and equity powers of the Court of International Trade defies understanding, unless viewed as stemming from a nostalgic desire that all things remain as they had long been in its litigation before the Customs Court. The government's assertion that court rule 60(b) is "unauthorized" by 28 U.S.C. § 2071[16] because it "enlarge[s] the CIT's

---

**14.** That the court rule makes the clerk's dismissal order one "on the merits" thus has no effect on the power of the court to vacate the order in response to a motion under court rule 60(b).

**15.** Responding to an Amicus' reference to the Rules Committee Report, n. 10, *supra,* the government dismisses in a single sentence the Report and the court's rule 60(b) with another mantra-like repetition of "the CIT cannot enlarge its own jurisdiction." Neither the trial court nor the government appears to have recognized that their treatment of § 2646 as an

absolute bar to motions brought under rule 60(b) more than 30 days from the date of the order renders fruitless the court's 1986 amendment of its rule 60(b), *supra,* n. 10. Neither appears to recognize any distinction between a court's power to retry or rehear and its power to vacate a judgment or order.

**16.** 28 U.S.C. § 2071 reads:

The Supreme Court and all courts established by Act of Congress may from time to time prescribe rules for the conduct of their business. Such rules shall be consistent with

jurisdiction" is a particularly egregious example of that effort.[17] The Court of International Trade is a "court established by Congress", P.L. 84–703; H.Rept. No. 2348, 84 U.S.Code Cong. & Admin.News, at 3122–23 (1956); its rule 60(b) is clearly "consistent with Acts of Congress" (*see* e.g., 28 U.S.C. § 1585) and with "rules and practice and procedure prescribed by the Supreme Court" (*see* substantially identical Rule 60(b), Fed.R.Civ.P.).[18]

Nowhere does the government acknowledge the long-recognized distinctions between motions for retrial or rehearing and motions for relief from judgment. We list only one. The former suspends finality. 28 U.S.C. § 2645(c). The latter does not. Indeed, the latter comes into play only after a judgment becomes final, no adequate remedy at law exists, and equitable relief is available, *see* 7 J. Moore, *Federal Practice*, ¶ 60.20 (2d ed. 1987) (and cases cited therein), and the need to exercise a court's power in equity arises. It may have been necessary to ignore distinctions among remedies in the past. Upon enactment of 28 U.S.C. § 1585, making equitable relief available, the need to ignore them ceased, for a grant of an equitable remedy cannot be affected by a time limit imposed on a grant of the entirely distinct remedy of a rehearing.

### (4) 28 U.S.C. § 1585

Exhibiting an appalling lack of candor, the government's brief nowhere even mentions 28 U.S.C. § 1585, the statute granting the Court of International Trade "all the powers in ... equity" of the district court. Unwilling for some reason to assist this court by supplying the benefit of its view on the effect of Section 1585, and citing no legal theory requiring limitation of the

court's equitable powers, the government simply ignores the arguments of Rhone and *amici* founded on Section 1585.

The government's silence may be explainable in light of the plain meaning of Section 1585. For the government to say Section 1585 does not fill the gap identified in *Torch*, does not support the court's adoption of rule 60(b), and does not grant the court the equity power needed to deal with Rhone's motion, would be to argue that § 1585 is a nullity. Lacking the kidney to so argue, and unwilling to confess error in the trial court, the government simply pretends that § 1585 does not exist.

At liberty to disregard no statute, this court is required to uphold all, and to reconcile, when necessary and possible, those in apparent conflict. *See Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1018, 104 S.Ct. 2862, 2880–81, 81 L.Ed.2d 815 (1984); *United States v. Borden*, 308 U.S. 188, 199, 60 S.Ct. 182, 188–89, 84 L.Ed. 181 (1939). There is, of course, no conflict between Sections 2646 and 1585, the former setting a time limit for motions for retrial or rehearing, the latter granting the equitable power to, *inter alia*, vacate a final order. Similarly, there is no conflict between court rules 59 and 60(b) adopted under the authority of Sections 2646 and 1585, respectively.

As above indicated, the trial court dismissed Sections 1585 and 2643(c)(1) on the sole truism that a court cannot exercise equitable powers where "jurisdiction" does not lie. Equitable remedial powers, however, aid a court in the exercise of its subject matter jurisdiction; they are not themselves jurisdictional predicates. Given the necessarily tortured treatment in *Torch* of motions like Rhone's, wherein such mo-

---

Acts of Congress and rules and practice and procedure prescribed the Supreme Court.

**17.** The government argues as though the Court of International Trade had promulgated a rule granting more than 30 days in which to file a motion for retrial or rehearing. It has not done so. Its rule 59 deals with motions for retrial and rehearing and imposes the same 30 day limit imposed by § 2646.

**18.** As part of its attack by indirection on the legitimacy of the rule, the government devotes two pages of its brief to testimony on a non-enacted bill, in which testimony it was suggested that the Customs Court be authorized to adopt the substance of rule 60(b). As indicated in the text, *infra*, the government disingenuously ignores Congress' subsequent enactment of 28 U.S.C. § 1585, which gave the court not only the power exercisable under rule 60(b), but *all* the equitable powers of a district court.

tions were placed in the only available pigeonhole (for retrial or rehearing under Section 2639) and Section 2639 was treated as "jurisdictional" because the Customs Court lacked equitable powers, the trial court's analysis is seen as an effort, albeit flawed, to apply *stare decisis.* The analytical error lay in not considering the vast change in the landscape of international trade jurisprudence effected by the enactment of Section 1585.[19]

### Equitable Considerations

A most disconcerting feature in this and past cases involving "suspended" actions has been the enforced enduring of recognized inequities and the consequent creation of injustice. As above indicated, the trial court here thoughtfully noted and described Rhone's "appropriate basis" for setting aside the clerk's dismissal order. In *Torch, Quigley & Manard v. United States,* 496 F.2d 1214, 1216 (CCPA 1974), and *Consolidated,* 527 F.2d at 641, the courts recognized that the equities were on the movant's side. In *Consolidated,* though the CCPA recognized and the government conceded that the motion's untimeliness was entirely the government's fault, the government nonetheless opposed the motion, citing section 2639. *Id.* In no instance is there the slightest indication that the government would have been prejudiced by a grant of the motion, and in *Torch* and *Consolidated* the government conceded that the motion had merit. Yet the courts, lacking equity power, were constrained to deny relief. The enactment of § 1585 now enables the Court of International Trade to avoid the stain of injustice in future cases in which the equities dictate return of an action to the suspension disposition calendar.

We do not, however, order a grant of Rhone's motion. That is a matter assigned in the first instance to the trial court's discretion. As above indicated, the sole issue on this appeal is whether the Court of International Trade has the power to grant

a motion under court rule 60(b) to vacate a dismissal order and restore dismissed actions to the suspension disposition calendar. We hold that it does. The trial court's decision that it lacks "jurisdiction" to do so therefore cannot stand, its denial of Rhone's motion must be reversed, and the case must be remanded for further action on that motion.

### COSTS

Each party shall bear its own costs.

**REVERSED and REMANDED.**

NIES, Circuit Judge, concurring in the result.

Whether Rhone's motion is viewed as substantive or ministerial is irrelevant to the resolution of this case. Moreover, I disagree that the term "jurisdiction" was used inappropriately by the trial court or by the government. A time limit fixed by statute within which to file a motion is a *jurisdictional* restriction. *Accord Schacht v. United States,* 398 U.S. 58, 68, 90 S.Ct. 1555, 1561–62, 26 L.Ed.2d 44 (1970) (Harlan, J., concurring) (The Supreme Court "treats time requirements imposed by statute as jurisdictional."). For example, the time limit of Fed.R.Civ.P. 60(b), because it is statutory, *see* 28 U.S.C. app. (1982), is jurisdictional. *See United States v. Marin,* 720 F.2d 229, 231 (1st Cir.1983) (Fed.R.Civ.P. 60(b) time limit "is an absolute bar to relief from the judgment.") *See also* Fed.R.Civ.P. 60(b) advisory committee's note ("If the right to make a motion is lost by the expiration of the time limits fixed in these rules, the only other procedural remedy is by a new or independent action to set aside a judgment upon those principles which have heretofore been applied in such an action.").

Unlike its federal rule counterpart, the provisions of CIT Rule 60(b) are not statutory, being merely court-adopted, and, therefore, are not jurisdictional. *See Washington–Southern Navigation Co. v.*

---

**19.** The power to grant relief from a final order is, of course, but one among many powers in equity granted by section 1585. The court's exercise of its informed discretion in the employment of all its equity powers in future cases cannot but aid its conduct of the judicial process.

*Baltimore & Philadelphia Steamboat Co.,* 263 U.S. 629, 635, 44 S.Ct. 220, 222, 68 L.Ed. 480 (1924) ("no rule of court can enlarge or restrict jurisdiction"); *Schacht,* 398 U.S. at 68, 90 S.Ct. at 1561–62 (Harlan, J., concurring) (not anomalous that time limitations of Supreme Court Rules are not jurisdictional while statutory time limits are jurisdictional). Nevertheless, if the statutory time period of 28 U.S.C. § 2646 (1982) were applicable to a motion under CIT Rule 60(b), that period would be a restriction on the "jurisdiction" of the Court of International Trade.

I agree with the majority that section 2646 does not apply to a CIT Rule 60(b) motion. The decision in *United States v. Torch Manufacturing Co.,* 509 F.2d 1187 (CCPA 1975), did not hold that section 2646 (formerly section 2639) *restricted* the time period for filing a Rule 60(b) motion. Because the Court of International Trade's predecessor, the United States Customs Court, had neither equity jurisdiction nor a Rule 60(b) at that time, section 2646 was interpreted to *grant* relief in compelling circumstances in what might be called a 60(b) situation. *Torch* held only that parties had to seek such relief within the time limits of section 2646. *Id.* at 1192. The necessity for that interpretation ended in 1980 when Congress granted that court "all the powers in ... equity of ... a district court of the United States," 28 U.S.C. § 1585 (1982), and the court adopted its Rule 60(b) pursuant to that authority. Thereafter, Rule 60(b)–type motions were decoupled from section 2646 and could be brought for what they are, motions for relief from judgment, and no longer needed to be deemed motions under section 2646 for rehearing or retrial. Thus, the *Torch* analysis has been preempted by the statutory change and by the court's exercise of its equity powers. In sum, a party that moves for relief within the one-year time requirement of CIT Rule 60(b), as Rhone did here, is entitled to have its motion heard. The thirty-day time requirement of section 2646 is inapplicable.

For the above reasons, I agree with the majority that the Court of International Trade has the authority under CIT Rule

60(b) to grant a motion to vacate the dismissal order at issue and that the case must be remanded.